In the Matter of the Arbitration between NATIONAL CASH REGISTER COMPANY, Respondent, and CHARLES WILSON, as President of Cayuga Lodge No. 1607, International Association of Machinists, et al., Appellants.

Third Department, April 23, 1959.

*Casey & King* and *William J. Isaacson,* attorneys (*Louis Poulton* of counsel), for appellants.

*Harrison, Coughlin, Dermody & Ingalls* (*George L. Ingalls* of counsel), for respondent.

COON, J. In the interests of clarity and brevity the parties will be referred to herein as the " Company " and the " Union."

At all times pertinent to this controversy there was in existence and operation a collective bargaining agreement between the Company and the Union. Among other things the agreement provided for seniority rights of the employees of the Company, and contained the following arbitration clause:

" D. Arbitration. Should any disagreement arise which cannot be settled between the Company and the Union, respecting the provisions of this agreement, the matter in question shall be submitted to a Board of Arbitration * * * The findings of the Arbitration Board shall be final and binding and shall be respected by both parties.

" F. Scope of Arbitration. The Arbitration Board shall have the authority only to settle disputes arising under this agreement and may only interpret and apply this agreement to the facts of the particular grievance involved. It shall have no power to add to, subtract from or modify this agreement or any supplement to it."

On October 23, 1956, the Union called a strike over a wage dispute. The strike was not in violation of the collective

bargaining agreement. Some employees went out on strike and some did not. After negotiations a memorandum of agreement was entered into between the Company and the Union on December 20, 1956, amending and modifying the original agreement in several respects and extending its term. This memorandum of agreement contained the following provision: "6. The seniority provisions of the Collective Bargaining Agreement are hereby waived for a period of ten (10) working days, following the signing of a strike settlement agreement with respect to recall of the employees, and thereafter such recall shall be in accordance with the seniority provisions of the existing collective bargaining agreement." On December 24, 1956, a second and final strike settlement agreement was entered into which contained the following clause: "All recalls under Section 6 of the memorandum agreement will be made on a fair and equitable basis."

After the 10-day period referred to in section 6 had expired, the Company, in recalling employees to work, applied seniority rights only among those employees who were out because of the strike. The Union contended that seniority rights should be applied among all the employees in determining the order of recall, including the employees who did not strike at all and those who had been recalled during the 10-day period when seniority rights were suspended. Stripped of unnecessary detail this is the essence of what gave rise to this controversy.

The Union filed a grievance as to the manner of recall in accordance with the arbitration procedure provided for in the original collective bargaining agreement, and demanded arbitration of the controversy. While the Company contended that the matter was not arbitrable, it made no motion for a stay of arbitration under section 1458 of the Civil Practice Act. A board of arbitration consisting of three members, one of whom was selected by the Company, proceeded to hear the matter. The Company contended before the arbitrators that the controversy was not arbitrable, but proceeded to participate in the arbitration proceedings throughout. In their decision a majority of the arbitrators overruled the Company's contention, and made an award which substantially upheld the Union's contentions, and awarded back pay where seniority rights had been violated, as found by the arbitrators.

The court below has held that the matter was not arbitrable and that the arbitrators exceeded their authority, based largely upon the theory that the memorandum of agreement of December 20 and the final strike settlement agreement of December 24

contained no arbitration clause, and that the matter arbitrated arose under these agreements rather than under the original collective bargaining agreement. We think the court was in error for two reasons. First, the memorandum of agreement of December 20 and the final settlement agreement of December 24 were merely supplements to the original agreement which modified and amended the original agreement only to the extent therein stated. As amended the whole three became one agreement, and the arbitration clause contained in the original, left unchanged by any supplemental agreement, applied to the entire agreement between the parties as amended and supplemented. Second, even if this were not so, by selecting one of the arbitrators and participating fully in the arbitration proceedings the Company may not, following an adverse decision, now assert to the court a contention that the matter was not arbitrable. (*Matter of Iino Shipbuilding & Eng. Co.*, 6 A D 2d 159; *Matter of Harris* [*East India Trading Co.*], 16 Misc 2d 87; *Matter of Simplex Mach. Tool Corp.* [*Swind Mach Co.*], 16 Misc 2d 85.)

The power of the court to interfere with an arbitration award is very carefully circumscribed by article 84 of the Civil Practice Act. The only grounds for vacating an award are prescribed by sections 1458 and 1462 of the Civil Practice Act. No fraud or misconduct is suggested here, and the arbitrators did not exceed their powers or so imperfectly execute them that a material, final and definite award on the subject matter submitted was not made. The award is final and beyond the interference of any court, for any reasons established here, both by the agreement of the parties and by the terms of the statute.

We do not think that the alleged difficulties which the Company will encounter in determining the amount due various employees is of any serious moment. If it amounts to more than mere mathematical computation as claimed, the matter will become a subject for agreement between the parties or for determination by the arbitrators.

The order should be reversed, with $10 costs, and the motion to confirm the award should be granted, with $10 costs.

FOSTER, P. J., BERGAN, GIBSON and REYNOLDS, JJ., concur.

Order reversed on the law and the facts, with $10 costs, and the motion to confirm the award granted, with $10 costs.