Charles D. READER and Patricia Reader, Plaintiffs,

v.

HIRSCH & CO., Defendant.

United States District Court
S. D. New York.
Aug. 1, 1961.

Hays, St. John, Abramson & Heilbron, New York City, for plaintiffs; Osmond K. Fraenkel, New York City, of counsel.

Guggenheimer & Untermyer, New York City, for defendant.

DAWSON, District Judge.

Hirsch & Co. has brought on a motion, pursuant to section 3 of the United States Arbitration Act, 9 U.S.C. § 3, to stay this action and all proceedings herein until arbitration may be had of the dispute between the parties. The claim for arbitration is founded on two agreements which provide that "any controversy [between the parties] * * * shall be settled by arbitration * * *." Customer's Agreement, paragraph 16. A similar provision is found in the Guaranty of Account ("Any controversy arising between us shall be determined by arbitration * * *"). Both these agreements were signed by Charles Reader. The plaintiffs contend, however, that despite these provisions, arbitration may not be had.

Plaintiffs seek to recover damages for losses suffered in securities transactions allegedly arranged by Hirsch & Co. in violation of the margin requirements of section 7 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78g. Hirsch & Co. is a stock brokerage firm with membership in the New York Stock Exchange, the American Stock Exchange, and other exchanges.

The motion to stay the action until the controversy has been arbitrated is contested by the plaintiffs on the grounds that the remedy designated by the statute, i. e., a suit in a federal court, is exclusive. This argument is founded on two sections. Section 27 of the 1934 Act, 15 U.S.C.A. § 78aa, provides:

"The district courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder * * *."

The non-waiver provision, section 29(a), 15 U.S.C.A. § 78cc(a), states:

"(a) Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."

### The Issue.

A ruling on this motion requires that the Court determine whether arbitration is available under the Securities Exchange Act of 1934, where the parties have previously, i. e., prior to the time of actual controversy, agreed that any

disputes arising thereafter shall be submitted to arbitration.

### Wilko v. Swan.

Wilko v. Swan, 1953, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168, was an action brought under section 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 77*l*(2) to recover damages for alleged misrepresentation in the sale of securities. Prior to answering the complaint the defendant moved to stay the trial of the action, pursuant to section 3 of the United States Arbitration Act, until arbitration could be had in accordance with the terms of certain margin agreements between the parties.

The Court was forced to choose between two desirable but conflicting courses: (1) the arbitration of a dispute and (2) a plaintiff's choice of forum, as provided by the statute. Arbitration had already established a history of being judicially favored as an expeditious means of settling disputes. By passage of the federal act, Congress had signified its approval of arbitration. The Securities Act of 1933 was designed to protect investors. It provides a security buyer-plaintiff with a wide choice of courts and venue, and the privilege of nationwide service of process.

The Court turned to section 14 of the Securities Act of 1933, 15 U.S.C.A. § 77n,

"Any condition, stipulation, or which provides:

provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void."

Based on this non-waiver clause, the Court held:

"The words of § 14 * * * void any 'stipulation' waiving compliance with any 'provision' of the Securities Act. This arrangement to arbitrate is a 'stipulation,' and we think the right to select the judicial forum is the kind of 'provision' that cannot be waived under § 14 of the Securities Act. * * *

"When the security buyer, prior to any violation of the Securities Act, waives his right to sue in courts, he gives up more than would a participant in other business transactions. The security buyer has a wider choice of courts and venue. He thus surrenders one of the advantages the Act gives him and surrenders it at a time when he is less able to judge the weight of the handicap the Securities Act places upon his adversary." Id., 346 U.S. at page 435, 74 S.Ct. at page 186.

" * * * By the terms of the agreement to arbitrate, petitioner is restricted in his choice of forum prior to the existence of a controversy. While the Securities Act does not require petitioner to sue, a waiver in advance of a controversy stands upon a different footing.

" * * * [Congress] has enacted the Securities Act to protect the rights of investors and has forbidden a waiver of any of those rights. Recognizing the advantages that prior agreements for arbitration may provide for the solution of commercial controversies, we decide that the intention of Congress concerning the sale of securities is better carried out by holding invalid such an agreement for abitration of issues arising under the Act." Id., 346 U.S. at page 438, 74 S.Ct. at page 188.

With the decision in Wilko v. Swan, it was established that agreements to arbitrate future controversies arising under the Securities Act of 1933 were void.

### The Securities Statutes.

The Securities Act of 1933, 15 U.S.C.A. § 77a et seq. is concerned primarily with the initial distribution of securities, rather than subsequent trading. It imposes civil and criminal liabilities for material misstatements or omissions or misrepresentations. Loss, Securities Regulation, 83–84 (1951). The essential purpose of the Securities

Act of 1933 is the protection of investors. This is achieved by requiring registration with the Commission and publication of certain information concerning securities before they are offered for sale. A. C. Frost & Co. v. Coeur D'Alene Mines Corp., 1941, 312 U.S. 38, 40, 61 S.Ct. 414, 85 L.Ed 500; Securities and Exchange Commission v. Guild Films Co., 2 Cir., 1960, 279 F.2d 485, 489; Gilligan, Will & Co. v. S.E.C., 2 Cir., 1959, 267 F.2d 461, 463.

The Securities Exchange Act of 1934 does not overlap the 1933 Act, but rather supplements it, i. e., it deals with post distribution trading. The 1934 Act has three basic purposes: "To afford a measure of disclosure to people who buy and sell securities; to regulate the securities markets, and to control the amount of the Nation's credit which goes into those markets." Loss, supra, at 84. To insure fair dealing in the purchase and sale of securities, the Act contemplates publicity of a corporation's financial reports.

### The Case at Bar.

With this similarity or continuum of purpose, at first glance it might seem that Wilko v. Swan disposes of the question now before the Court. Before such a handy conclusion can be accepted, it is necessary to verify the similarity of the specific sections considered.

The Wilko cause of action was founded on section 12(2) of the Securities Act of 1933, which created a special right to recover for misrepresentation, differing substantially from the common law action in that the seller had the burden of proving the lack of scienter. The attempt to waive the specific remedy created by the statute, along with its concomitant special burdens of proof, was invalidated by the Court.

The Readers' claim is founded on a violation of section 7 of the Securities Exchange Act of 1934, the margin requirements section. That provision does not specify a civil remedy. Rather it is a regulatory provision. In strict terms, therefore, whereas Wilko dealt with a provision creating a civil remedy, the instant case does not.

■ However, it is now well established that where one violates a legislative enactment by doing a prohibited act and thereby causes injury to another, the latter has a civil right of action if one of the purposes of the statute was to protect interests similar to his own. 2 Restatement, Torts § 286 (1934). It has been held that a private right of action is to be inferred from the specific section now in issue, section 7. Remar v. Clayton Securities Corp., D.C.D.Mass. 1949, 81 F.Supp. 1014, 1017; Appel v. Levine, D.C.S.D.N.Y.1948, 85 F.Supp. 240. Similarly, a private right of action has been implied where other sections of the 1934 Act have been violated, e. g., Baird v. Franklin, 2 Cir., 1944, 141 F.2d 238 (section 6(b), 15 U.S.C.A. § 78f(b)); Robinson v. Difford, D.C.E.D.Pa.1950, 92 F.Supp. 145, 149 (section 10(b), 15 U.S.C.A. § 78j(b)); Kardon v. National Gypsum Co., D.C.E.D.Pa.1946, 69 F.Supp. 512, 513 (section 10(b), 15 U.S.C.A. § 78j(b)); Howard v. Furst, D.C.S.D.N.Y.1956, 140 F.Supp. 507, 510–511 (section 14(a), 15 U.S.C.A. § 78n(a)); Geismar v. Bond & Goodwin, Inc., D.C.S.D.N.Y.1941, 40 F.Supp. 876 (section 29(b), 15 U.S.C.A. § 78cc(b)).

Three sections of the Act of 1934 expressly provide for civil liability: section 9(e), 15 U.S.C.A. § 78i(e); section 16(b), 15 U.S.C.A. § 78p(b) and section 18(a), 15 U.S.C.A. § 78r(a). A private action has also been implied under the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq. Goldstein v. Groesbeck, 2 Cir., 1944, 142 F.2d 422, 427, 154 A.L.R. 1285. See Downing v. Howard, 3 Cir., 1947, 162 F.2d 654, 659.

In addition, while section 7(c) does not create a private right of action, the House and Senate Reports make it clear that such was within the intention of Congress. The report of the Senate Banking and Currency Committee includes as one of the intended effects of the margin provisions the protection of "the margin purchaser by making it im-

possible for him to buy securities on too thin a margin." S.Rep. No. 1455, 73d Cong., 2d Sess. 11 (1934). The House Report recognized and agreed with this intention, stating that "protection of the small speculator by making it impossible for him to spread himself too thin * * * will be achieved as a by-product of the main purpose [to effectively limit undesirable speculation]." H.R. No. 1383, 73d Cong., 2d Sess. 8 (1934). Thus, section 7(c) does seek to protect individual investors and results in the creation of an implied statutory right.

But, even if the substantive portions of the Acts of 1933 and 1934 were more dissimilar, still Wilko would be quite persuasive in determining the instant application. It is important to note that Wilko turned not on the substantive provision, i. e., section 12(2), under which the action was brought, but rather on the forum clause, section 22(a), 15 U.S. C.A. § 77v(a), under which a plaintiff was given a wide choice of venue. It was this section, in conjunction with the statute's non-waiver provision, section 14, 15 U.S.C.A. § 77n, that caused the Supreme Court to hold the arbitration agreement invalid. The 1934 Act, section 27, 15 U.S.C.A. § 78aa, provides that the district courts shall have exclusive judisdiction of proceedings brought under this chapter, and grants to plaintiffs a relatively wide choice of fori. Similarly the 1934 Act (15 U.S.C.A. § 78cc) contains a non-waiver provision which is almost identical with that in the 1933 Act. While it might be contended that in spite of these parallel similarities, since the plaintiff's claim is merely inferred from section 7, the forum provisions and non-waiver provisions are inapplicable, a similar argument has already been disposed of in Remar v. Clayton Securities Corp., D.C.D.Mass.1949, 81 F.Supp. 1014, 1017. See, Loss, The S.E.C. Proxy Rules

and State Law, 73 Harv.L.Rev. 1249, 1272–77 (1960).

The Effect of Non-Waiver Provisions.

Although Wilko v. Swan is the only case which considers the effect of the non-waiver provision on an agreement to arbitrate, the Supreme Court has reached similar conclusions in dealing with statutes containing comparable clauses. Under the Federal Employers' Liability Act,[1] a venue limiting agreement, which deprived the plaintiff of his right to bring an action in any forum authorized by the Act, was held void. Boyd v. Grand Trunk Western R. R. Co., 1949, 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55. The Court said:

"The right to select the forum granted in § 6 is a substantial right. It would thwart the express purpose of the Federal Employers' Liability Act to sanction defeat of that right * * *." Id., 338 U.S. at page 266, 70 S.Ct. at page 28.

Dealing with the same statute, in Duncan v. Thompson, 1942, 315 U.S. 1, 62 S.Ct. 422, 86 L.Ed. 575, the Court held a covenant not to sue, which had been given for a consideration, void, since the agreement was entered into prior to the existence of the claim. For a similar result see Philadelphia, Baltimore & Washington R. R. Co. v. Schubert, 1912, 224 U.S. 603, 32 S.Ct. 589, 56 L.Ed. 911. In Brooklyn Savings Bank v. O'Neil, 1945, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296, the Supreme Court, in considering the liquidated damages provision of the Fair Labor Standards Act held a written waiver of rights thereunder invalid. Id., 324 U.S. at page 710, 65 S.Ct at page 903.

An agreement to arbitrate a claim arising under the Federal Emergency Price Control Act of 1942 was held unenforcible: The Court found that the

---

1. The non-waiver provision of the Federal Employers' Liability Act is comparable to that in the Securities Act:

"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void * * *." 45 U.S.C.A. § 55.

Act provided a judicial remedy which was exclusive. Kingswood Management Corp. v. Salzman, 1947, 272 App.Div. 328, 70 N.Y.S.2d 692.

Thus parties have not been permitted to waive their statutory rights in advance of the existence of a controversy (as opposed to settlement of a disputed claim, which is generally permitted) where either the statute contains a non-waiver provision or the Congressional purpose would be thwarted thereby. The attempt to arbitrate in the present instance would be proscribed by both tests.

However, where the Congressional purpose would be aided and no non-waiver clause stands as a bar, arbitration has been permitted. Agostini Bros. Bldg. Corp. v. United States, 4 Cir., 1944, 142 F.2d 854 (Miller Act, 40 U.S.C.A. § 270a et seq.); Evans v. Hudson Coal Co., 3 Cir., 1948, 165 F.2d 970 (Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.); Watkins v. Hudson Coal Co., 3 Cir., 1945, 151 F.2d 311, 319–321; Donahue v. Susquehanna Collieries Co., 3 Cir., 1943, 138 F.2d 3, 149 A.L.R. 271. See generally, Note, 62 Yale L.J. 985, 990, 998–99 (1953).

### Conclusion.

The Securities Exchange Act of 1934 established margin requirements and made violation of those rules unlawful. Based on the implication of a private right of action, a plaintiff may bring his suit under the Act with the concomitant wide choice of venue and exclusive federal court jurisdiction. Whether the rights thus granted by the Act may be waived by a previous agreement to arbitrate must be decided in the context of the above and in conjunction with the non-waiver provision that declares "any * * * stipulation * * * to waive compliance with any provision * * * void." 15 U.S.C.A. § 78cc(a).

The benefits of arbitration, i. e., that it allows a prompt disposition of a dispute in an economical and convenient fashion, must necessarily be weighed against the potential disadvantages, disadvantages which become more apparent where a statute, as the Securities Acts do, specifies a remedy. Arbitrators do not have the benefit of judicial instruction on the law. Their awards are often made without explanation or discussion of their reasons, and without a complete record of their proceedings. Questions of "burdens of proof," "reasonable care," or "material fact" cannot be examined. The ultimate judicial power to confirm an award is necessarily limited. See generally, Wilko v. Swan, 1953, 346 U.S. 427, 436, 74 S.Ct. 182, 98 L.Ed. 168; Note, 62 Yale L.J. 985, 990, 996–99 (1953).

"[A]rbitration, whatever its merits or shortcomings, substantially affects the cause of action created * * *. The nature of the tribunal where suits are tried is an important part of the parcel of rights behind a cause of action. The change from a court of law to an arbitration panel may make a radical difference in ultimate result." Bernhardt v. Polygraphic Co. of America, Inc., 1956, 350 U.S. 198, 203, 76 S.Ct. 273, 276, 100 L.Ed. 199.

By permitting parties to agree to arbitrate any future disputes arising under section 7(c) or other sections of the 1934 Act the Court would be sanctioning a plaintiff's waiver of all roads to recovery, save arbitration. This choice would necessarily be made at a time when the facts of the claim were unknown, since it did not yet exist, and so the future plaintiff would be accepting the risk that the approximations of the arbitration process would operate to his disadvantage. See Note, 62 Yale L.J., supra, at 996. This abandonment of the buyer's right to choose his forum, and potential abandonment of other rights under the Act, is in violation of the statute's non-waiver provision. Furthermore, since premature choice of the form of adjudication can offer the buyer no greater advantage than exists under the Act, its potential effect can be, if anything, only his disadvantage. As such, these agreements do not accord with Congressional purpose. "[T]he intention of Congress concerning the sale of securities is bet-

ter carried out by holding invalid such an agreement for arbitration of issues arising under the Act." Wilko v. Swan, supra, 346 U.S. at page 438, 74 S.Ct. at page 188.

The holding in this opinion is not intended to suggest that arbitration is not available where an existing dispute is, upon the consent of the parties, submitted to arbitration. That question is not before the Court and is not passed on at this time. It may be noted, however, that the arguments and considerations which preclude the validity of an agreement to arbitrate future disputes are generally inapplicable to an agreement to arbitrate existing disputes. See generally, Note, 62 Yale L.J., supra, at 994–96.

The motion to stay all proceedings until arbitration may be had, in view of the invalidity of the arbitration agreement, is denied. So ordered.