## Moran, Appellant, *v.* Paine, Webber, Jackson & Curtis.

Argued March 16, 1966. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James D. McDonald, Jr.,* with him *Curtze, Gent & McCullough,* for appellant.

*John F. Potter,* with him *Gifford, Graham, Mac-Donald & Illig,* for appellee.

OPINION BY MR. JUSTICE JONES, June 24, 1966:

On March 15, 1960, Mary B. Moran executed a written agreement with the brokerage firm of Paine, Webber, Jackson & Curtis, which provided for the maintenance of a margin account by Mrs. Moran with that firm. Paragraph 15 of that agreement specifically stated: "If any controversy arises out of this contract it shall be determined by arbitration."

Mrs. Moran alleged that on March 17, 1960, the brokerage firm induced her consent to purchase 1,000 shares of Carrier Corporation stock by misrepresentations and misleading statements and that the brokerage firm made an unauthorized purchase of 1,000 shares of American Cable and Radio stock on September 1, 1960. In consequence of the alleged mishandling of her brokerage account, Mrs. Moran claimed losses in excess of $14,000 incurred chiefly in the purchase and resale of the stocks mentioned above.

By November 1962, Mrs. Moran had decided to seek redress for the losses allegedly suffered by her. After making written inquiries to the New York Stock Exchange and to the Securities and Exchange Commission concerning what remedies were available, Mrs. Moran

entered into a submission agreement in August 1963 with the brokerage firm providing for the dispute to be arbitrated by five persons acting under the rules of the New York Stock Exchange. After a hearing, the arbitrators entered an award for Mrs. Moran on October 30, 1963, in the amount of $1,564.05, plus $240 for costs.

Dissatisfied with this result, Mrs. Moran then filed a petition for modification and/or vacation of the arbitration award on January 27, 1964, in the Court of Common Pleas of Erie County. After having permitted Mrs. Moran to amend her original petition four times, the trial court sustained with prejudice the brokerage firm's preliminary objections to the petition. From that order of November 8, 1965, dismissing her petition, Mrs. Moran has appealed to this Court.

Mrs. Moran's main contentions can be summarized as follows: (1) the 1960 margin agreement is void and unenforceable insofar as it requires that all stock disputes to arise in the future be resolved by arbitration; (2) the 1963 agreement of submission to arbitration [submission agreement] is also void and unenforceable because (a) it constitutes an illegal waiver of the remedial advantages of the Securities and Exchange Acts of 1933 and 1934 and (b) arbitration is not the proper judicial forum to decide any disputes between investors and their brokers and (3) Mrs. Moran cannot be said to have elected to submit her claims to arbitration because she was only complying with the express mandate of the void margin agreement and had no knowledge of her right to avail herself of remedies in a court of law.

Taking these arguments in order, we agree with Mrs. Moran that the arbitration provisions in the 1960 margin agreement are unenforceable. In *Wilko v. Swan*, 346 U.S. 427, 74 S. Ct. 182 (1953), the United States Supreme Court held that agreements for *future* arbitration of disputes arising under the Securities Act

of 1933[1] are void as contrary to the purposes of the Securities Act, especially the policy of granting investors a wide choice of forums in which to sue brokers. The *Wilko* reasoning has been extended to invalidate margin agreements requiring arbitration of *future* controversies under the *1934* Securities Exchange Act of 1934, 15 U.S.C. §78a et seq.: *Reader v. Hirsch & Co.,* 197 F. Supp. 111 (S.D. N.Y. 1961).

However, we do not agree with Mrs. Moran that the submission agreement of 1963, entered into *after* a controversy had arisen, is also void and unenforceable under *Wilko v. Swan,* supra. Mr. Justice REED, speaking for the *Wilko* majority, made it clear that there was only one question before the Court: "The question is whether an agreement to arbitrate a *future* controversy is a 'condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision' of the Securities Act which §14 declares 'void'." 346 U.S. at 430. (Emphasis added).

After making the analogy to *Boyd v. Grand Trunk Western R. Co.,* 338 U.S. 263, 70 S. Ct. 26, where it was held that an agreement restricting creation of a liability would violate the policy of the Federal Employers' Liability Act, Mr. Justice REED stated: "We need not and do not go so far in this present case. By the terms of the agreement to arbitrate, petitioner is restricted in his choice of forum *prior to the existence of a controversy. While the Securities Act does not require petitioner to sue, a waiver in advance of a controversy stands upon a different footing.*" 346 U.S. at 438 (emphasis added). Mr. Justice JACKSON added, in his concurring opinion, this terse dictum: "I agree with the Court's opinion insofar as it construes the Securities Act to prohibit waiver of a judicial remedy in favor of arbitration by agreement made before any

---

[1] 48 Stat. 74, 15 U.S.C. §77a et seq.

controversy arose. I think thereafter the parties could agree upon arbitration." 346 U.S. at 438.

Thus, far from containing language construing as void a submission agreement made after a controversy arose, the *Wilko* opinion has some language, albeit dictum, which would condone such an agreement. "Voluntary submission of an existing claim to arbitration would not appear to be a 'waiver' within the meaning of the Securities Act non-waiver clause. [Section 14, 15 U.S.C. §77n] . . . although he may not know the extent of recovery, a claimant who submits a dispute to arbitration knows in considerable detail just what he is entrusting to whom. Hence, if a settlement is permitted because the consequences of the bargain are clear, a submission should not be barred as a waiver of recovery rights. Nor should a submission be invalid as a waiver of the judicial forums made available by the Act. A submission, like the filing of a complaint, initiates proceedings to dispose of a particular claim. It would seem that the mandate of the non-waiver clause [15 U.S.C. §77n] is to leave open the defrauded investor's choice of forums and recovery methods until he is ready to begin proceedings. . . . Binding election of a permissible remedy, be it litigation, settlement, or arbitration, should be valid when the action taken actually sets in motion the machinery which will decide the dispute.": Notes, 62 Yale L.J. 985, 994, 995 (1953). See also Notes, 66 Harv. L. Rev. 1326, 1327 (1953).

The case of *Reader v. Hirsch & Co.*, 197 F. Supp. 111, 117 (S.D. N.Y. 1961) supports in dictum the above reasoning: "The holding in this opinion is not intended to suggest that arbitration is not available where an existing dispute is, upon the consent of the parties, submitted to arbitration. That question is not before the Court and is *not passed* on at this time. *It may be noted, however, that the arguments and considerations which preclude the validity of an agreement to arbi-*

*trate future disputes are generally inapplicable to an argument to arbitrate existing disputes.* See generally, Note, 62 Yale L.J., supra, at 994-96." (Emphasis added).

In our view, a dispute between the parties having arisen, an agreement to submit this *existing* dispute to arbitration was valid.

We also disagree with Mrs. Moran's contention that she did not voluntarily elect to submit the dispute to arbitration in August 1963 because she had no knowledge of the alternative—to avail herself of remedies in a court of law. Evidence of record directly refutes this contention. On November 10, 1962, Mrs. Moran wrote to Mr. John S. Watterson, Jr., of the brokerage firm asking for an explanation of the margin agreement. In that letter Mrs. Moran referred to two previous letters which she had received: "In Mr. McKernan's letter to me [Mrs. Moran] dated February 6, 1962, he [Mr. McKernan of the New York Stock Exchange] says—'We have always felt that such matters are more properly for resolution before *a court of law or board of arbitration.*'

"I [Mrs. Moran] would also like to quote from a letter received from Mr. Martin V. Miller, Acting Supervisory Attorney, Securities & Exchange Commission, dated March 2, 1962: 'It is suggested, therefore, that you give full facts again to the Department of Member Firms of the New York Stock Exchange. In the event you do not obtain any satisfaction in that manner, *you have your recourse in court.*'" (Emphasis original).

Thus, long before Mrs. Moran entered into the submission agreement of August 1963, she knew that she could have sought redress in a court of law. Instead, she elected to arbitrate. The arbitrator's decision, having been rendered, now binds us where there is no error of computation unrelated to the arbitrators' judgment and where there is no allegation that the arbitra-

72

tors acted improperly. *Morris White Fashions v. Susquehanna Mills,* 295 N.Y. 450, 68 N.E. 2d 437 (1946); *National Cash Register Company v. Wilson,* 184 N.Y.S. 2d 957, 960 (1959); *Pierce Steel Pile Corporation v. Flannery,* 319 Pa. 332, 339, 179 A. 558, 561 (1935).

We find no merit in either one of Mrs. Moran's remaining arguments.[2]  Order affirmed.

---

[2] Mrs. Moran claims that at the time the dispute was submitted to arbitration a confidential relationship existed between the parties which the brokerage firm breached by not fully acquainting Mrs. Moran with the provisions of the margin agreement. Assuming a confidential relationship did exist, the brokerage firm, far from misleading Mrs. Moran, wrote her on Nov. 14, 1962, to consult a lawyer in regard to her questions. "We suggest that, if you feel *personally that you have questions in your mind concerning the interpretation of either of the provisions, you consult with your own counsel in your behalf.*" (Emphasis added).

Mrs. Moran finally contends that the lower court erred in disposing of her petition to set aside the arbitration award on preliminary objections. The lower court had sufficient discretion in this matter to treat the brokerage firm's preliminary objections as an answer to the rule to show cause. See Goodrich-Amram, 1 Standard Pennsylvania Practice, 23, 1965 Supplement §208-1. This result is enforced here by Mrs. Moran's failure to object to the preliminary objections to the last two amended petitions. *Tonuci v. Lennon,* 13 Pa. D. & C. 2d 791 (1958) affirmed in part and reversed in part on other grounds, 186 Pa. Superior Ct. 522, 142 A. 2d 745 (1958).