**Mary B. MORAN, Appellant,**

v.

**PAINE, WEBBER, JACKSON & CURTIS.**

**No. 16615.**

United States Court of Appeals
Third Circuit.

Argued Nov. 3, 1967.

Decided Jan. 15, 1968.

James D. McDonald Jr., Quinn, Plate, Gent, Buseck & Leemhuis, Erie, Pa. (Curtze, Gent & McCullough, by John G. Gent, Erie, Pa., on the brief), for appellant.

John F. Potter, MacDonald, Illig, Jones & Britton, Erie, Pa., for appellees.

Before McLAUGHLIN, GANEY and SEITZ, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

This appeal concerns itself with one who invested in the purchases of stock through the brokerage house of Paine, Webber, Jackson & Curtis, appellee, by way of a margin agreement which she, as appellant, entered into with the appellee on the 15th of March, 1960. It seems that the relationship between the appellant and the appellee was an unhappy one from the very beginning, as some few days after the margin agreement had been entered into she alleges misrepresentation in the purchase of 1,000 shares of Carrier Corporation stock and later, in September of 1960, she complained that the appellee had made an unauthorized purchase of 1,000 shares of American Cable and Radio stock and finally complained that the brokerage house wrongfully collected commissions on the sales and purchases of stock which was the result of overactivity in her account, which they allegedly induced.

It is clear from the record that correspondence ensued between Mrs. Moran and the New York Stock Exchange, the Securities and Exchange Commission and the appellee, initiated by the appellant at a very early date after the margin agreement was entered into, but the earliest evidence in the record thereof was on February 6, 1962. Answering an earlier complaint concerning the conduct of the appellee, Leo L. McKernan, Manager of the Division of Conduct and Complaint Department of the New York Stock Exchange, on February 6, 1962, advised appellant that the function of the Exchange under its rules relative to the business conduct of its member firms was

for it to refer any complaints to the proper body of the Stock Exchange for consideration and possible disciplinary action, and that it was not within its jurisdiction to adjudicate claims or in any wise to act as an agency for the collection of such claims. Furthermore, McKernon wrote, "We have always felt that such matters are more properly for resolution before a court of law or a board of arbitration. If, therefore, you feel you have a civil claim against Paine, Webber, Jackson & Curtis, we can only suggest that you avail yourself of the legal remedies open to you." On February 9, 1962, the appellant wrote to the Securities and Exchange Commission concerning the alleged mishandling of her account in which she stated as follows: "On February 6, I received a letter from the Exchange advising that they were unable to resolve the conflict of thought and it was their suggestion that the matter could only be resolved before a court of law or a board of arbitration." On March 2, 1962, in a letter from the Securities and Exchange Commission's Acting Supervisory Attorney, he stated as follows: "You desire to secure help and advice in settling the controversy. It is noted that the New York Stock Exchange has suggested that the matter could only be resolved before a court of law or a board of arbitration. * * * It is suggested, therefore, that you give the full facts again to the Department of Member Firms of the New York Stock Exchange. In the event you do not obtain any satisfaction in that manner, you have your recourse in court. In this connection you may wish to consider discussing the matter with your own attorney."

Again, on April 6, 1962, Mrs. Moran was advised by the Acting Supervisory Attorney of the Securities and Exchange Commission as follows: "It is appropriate to point out that any investigations that we may conduct are usually non-public and any information developed therein is kept confidential except to the extent that it is made public in proceedings brought before the Commission or in the courts. As I told you over the phone, the federal securities laws do not authorize us to give legal or financial advice to members of the public and, accordingly, we cannot assist you in the resolution of your problems. In view of this, you may wish to seek the service of an attorney for advice and guidance." In spite of these directions to her, she wrote again to Leo L. McKernan, Manager of the Division of Conduct and Complaints of the New York Stock Exchange, asking for clarification of certain portions of the margin agreement and, amongst other things, asked his opinion on whether she could choose between arbitration and the courts and in answer thereto, on November 2, 1962, she was advised that a broker had authority to sell certain securities in his possession when the value of the stock held on margin reached a point where a call is needed, that is where the customer's equity in the stock was less than 25% required under Exchange rules and, finally, in the same letter, he stated, "We would suggest that you get in touch with your own attorney for such clarification as you desire."

In view of this correspondence, nine months later, on August 12, 1963, Mrs. Moran submitted her claim to arbitration. After a full hearing and by order of the Arbitration Board dated October 30, 1963, Mrs. Moran was awarded $1,564.05 plus $240.00 for costs. Dissatisfied with this award the appellant filed a Petition for Modification of Award in the Court of Common Pleas of Erie County, Pennsylvania, and it was defended by the appellee on the basis that the arbitrators' award was binding. The courts of Erie County ruled in favor of the appellee and Mrs. Moran appealed to the Pennsylvania Supreme Court and, in an opinion on June 24, 1966, that Court upheld the lower court's holding that the award of arbitration was final and binding. In the course of the opinion the court specifically held that Mrs. Moran voluntarily elected to submit to arbitration with the knowledge that she could avail herself of remedies in a court of law, that no confidential relationship

was breached and that she had not been misled in the transaction.

In the present action in the United States District Court for the Western District of Pennsylvania, appellant sets forth the same complaint which had been made to the Board of Arbitrators and before the Court of Common Pleas of Erie County, Pennsylvania, raising the same factual matters relative to the sale and purchase of certain securities. A Motion to Dismiss was filed by the appellee alleging that the arbitration award was binding and, accordingly, was res judicata. The lower court, treating the appellee's Motion to Dismiss as a Motion for Summary Judgment, granted partial judgment in an opinion and order dated November 17, 1966, as to all claims asserted in the cause of action based on both common law rights of action and as to all rights of action arising out of the Securities Act of 1933, but that all matters pleaded by the appellant under the Securities Exchange Act of 1934 remained at issue, as federal courts alone had jurisdiction thereunder.

 No appeal by either the appellant or the appellee was taken from this opinion and order granting partial summary judgment as to all claims asserted other than the matters pleaded under the Securities Exchange Act of 1934.

Since there was no certification under Rule 54(b), that there was no just cause for delay, see Luff v. Luff, 98 U.S.App. D.C. 211, 233 F.2d 702, 704, it is requisite that the court now review the judgment of the lower court. Accordingly, after a careful scrutiny of the record, we affirm the findings of the lower court that the defense of res judicata was there well pleaded as to appellant's cause of action arising out of its common law rights cognizable under diversity jurisdiction and as to those rights claimed under the Securities Act of 1933 cognizable under the court's concurrent jurisdiction.

 As to the matters pleaded under the third cause of action, to wit, under the Securities Exchange Act of 1934,

based upon waiver of relief under that Act, the appellee filed an answer setting forth the affirmative defense of arbitration and award by reason of her voluntary submission to arbitration and res judicata. Subsequent to the appellee's answer and defense set forth therein, the appellee filed its Motion for Summary Judgment and in an opinion and order dated March 23, 1967, summary judgment in favor of the defendant was granted by the lower court. Thus this appeal from that order which limits this court to a determination of the validity of the lower court's ruling that the appellant, by her choice of arbitration, waived proceeding in a federal court under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and whether choice of arbitration was a voluntary one under all the circumstances. The Act of 1934, on the other hand, is supplementary to the Securities Act of 1933, except that in its judicial remedy the federal courts shall be exclusive. Reader v. Hirsch & Co., D.C., 197 F.Supp. 111, 114. It concerns itself with post distribution trading and as Loss, Securities Regulation, (1950), states at page 84: "The 1934 Act has three basic purposes: To afford a measure of disclosure to people who buy and sell securities; to regulate the securities markets, and to control the amount of the Nation's credit which goes into those markets." The nonwaiver provision is almost identically worded in each Act wherein provision is made that any condition or stipulation binding any person to waive compliance with any section of the Act is void. The Act of 1934, accordingly, as indicated, is supplementary to that of 1933, except in its judicial remedy, and accordingly, the same logic is applicable to the Act of 1934, as is applicable to that of 1933, and, therefore, to both nonwaiver sections.

Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168, was an action brought under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2) to recover damages in the alleged misrepresentation in the sale of securities and, prior to answering the complaint, the defendant

moved to waive the trial of the action, pursuant to § 3 of the United States Arbitration Act, until arbitration could be had in accordance with the terms of the margin agreement between the parties. The Court there held that the non-waiver provision of the statute was void as to future arbitration controversies and held that under such circumstances the right to select the judicial forum was one that could not be waived. However, the instant case is on a different footing in that here the Arbitration Submission Agreement was to submit an existing controversy between the parties to arbitration and that differentiation expresses itself in Wilko v. Swan, supra, at p. 438, 74 S.Ct. 182, as well as in the concurring opinion of Justice Jackson, pointing to the fact that present controversies are arbitrable.

Furthermore, in Reader v. Hirsch & Co., supra, in an action brought under the Securities Exchange Act of 1934, wherein a motion to stay an action at law until arbitration might be had was denied. In a well-considered opinion, Judge Dawson, differentiating between the Acts of 1933 and 1934, held that, here, likewise, an agreement to arbitrate a future controversy was void but, 197 F. Supp. at p. 117, stated as follows: "The holding in this opinion is not intended to suggest that arbitration is not available where an existing dispute is, upon the consent of the parties, submitted to arbitration. * * * It may be noted, however, that the arguments and considerations which preclude the validity of an agreement to arbitrate future disputes are generally inapplicable to an agreement to arbitrate existing disputes. See generally, Note, 62 Yale L.J., supra, at 994–996."

■ We, therefore, hold that under the Securities Exchange Act of 1934, the voluntary submission to arbitration of an existing controversy is a valid one and, absent fraud or a basic fault in the proceedings, none of which is here asserted, the proceeding is a valid one. Panza v. Armco Steel Corp., 316 F.2d 69 (3rd Cir.), cert. denied 375 U.S. 897, 84 S.Ct. 174, 11 L.Ed.2d 125. Grant v. Atlas Powder Co., 241 F.2d 715 (6 Cir.).

■ As to the voluntary submission by the appellant of her controversy with the appellee to arbitration, it would seem, in our judgment, that extended discussion concerning the same would serve no useful purpose as it is abundantly clear from the correspondence heretofore adverted to, and especially her letter of February 9, 1962, wherein she admits that she had the opportunity for recourse to a court of law months before she voluntarily submitted her claim to arbitration. The Court of Common Pleas of Erie County found the same and the Supreme Court of Pennsylvania, in an extended discussion of the matter, found likewise. Moran v. Paine, Webber, Jackson & Curtis, 422 Pa. 66, 220 A.2d 624.

Accordingly, the appellant having consulted with counsel as to her rights, having been advised by the New York Stock Exchange and the Securities and Exchange Commission of her recourse to the courts, as well as to arbitration, we hold that she voluntarily submitted her cause under the 1934 Securities Exchange Act to arbitration, which concerned an existing controversy, and a valid award having been made thereon, she waived her right to litigate her identical claim to an alleged violation of the Securities Exchange Act of 1934 in the federal courts.

Accordingly, the judgment of the lower court will be affirmed as to all counts in the bill of complaint.