**In re COHEN'S WILL.**

**Abraham COHEN and Esther Friedlander, Co-Executors of the Last Will of Raphael Cohen, deceased, Plaintiffs,**

**v.**

**FRANCHARD CORPORATION, Louis A. Siegel, Seymour Young, Joseph E. Low, Glickman Corporation of Nevada and Wedgwood House Associates, Defendants.**

67 Civ. 4526.

United States District Court,
S. D. New York.

Sept. 23, 1970.

Nathaniel M. Sokolski, New York City, for Joseph E. Low.

Simpson, Thacher & Bartlett, New York City, for Franchard Corp.; Roy L. Reardon, John J. Tigue, Jr., New York City, of counsel.

Jacobs, Persinger & Parker, New York City, for Louis A. Siegel and Seymour Young; Irving Parker, I. Michael Bayda, New York City, of counsel.

## OPINION

TENNEY, District Judge.

In these companion motions, plaintiffs Abraham Cohen and Esther Friedlander, co-executors of the last will of Raphael Cohen, move pursuant to Fed.R. Civ.P. 23 for an order designating the within action a class action, and defendants Franchard Corporation, Louis A. Siegel and Seymour Young, joined by defendant Joseph E. Low, move pursuant to Rule 56 of the Federal Rules for summary judgment dismissing the complaint herein either entirely or with respect to Count three thereof.

Since designating the instant suit a class action would be an idle gesture were defendants successful in their motion, we first consider the motion to dismiss.

From the papers before the Court, it appears that this action was occasioned by an unsuccessful syndication, organized for the purpose of financing construction of two luxury apartment houses in New York City. Defendant Wedgwood House Associates (hereinafter referred to as "Associates") is a limited partnership organized in 1960 under the laws of New York, specifically for the purpose of acquiring title to two parcels of land and two apartment buildings to be built thereon. Pursuant to an agreement entered into on September 12, 1960, Associates agreed to lease the two apartment houses to defendant Glickman Corporation of Nevada (hereinafter referred to as "Nevada") as net lessee.

Sands, Geller & Webb, New York City, for plaintiffs. Ira J. Sands, James A. Geller, New York City, of counsel.

That is, a sale and leaseback arrangement was entered into whereby Associates retained ownership of the land and buildings while Nevada operated the buildings under net leases from Associates.

In order to finance this venture, it was agreed that the original partners (three general partners—Louis J. Glickman, Seymour Young and Louis A. Siegel, and one limited partner, Joseph E. Low) would contribute $105,000 in cash and that an additional $6,645,000 would be raised by offering limited partnership interests to the public at a cost of $5,000 a share. The public offering was completed in February of 1961, by which time all the limited partnership interests in Associates were sold.

In subscribing to these interests, each participant executed a subscription form [1] acknowledging (a) receipt of a brochure or prospectus,[2] (b) familiarity with the terms of the offering, and (c) that he was relying solely on the brochure or prospectus and documents referred to therein. In addition, each subscriber signed a limited partnership agreement by the terms of which he acknowledged and approved the affiliations of each general partner of Associates with companies interested in transactions affecting the partnership properties.[3]

At a meeting held on January 6, 1963, Associates' general partners informed the limited partners that Nevada had defaulted in its obligations under the net leases. As a consequence of these defaults, the partners were told that the monthly distributions previously paid to the limited partners would have to be discontinued and that in order to prevent possible mortgage and lien foreclosures approximately $500,000 was needed.

By letter dated February 1, 1963 from defendants Siegel and Young,[4] the limited partners were further advised that Mastan Corporation had agreed to advance the necessary funds to Associates provided that Nevada be dispossessed as net lessee and replaced by Mastan or its designee.

In January of 1963, prior to receipt of the above-mentioned letter, an executive committee (hereinafter referred to as the "Committee") of limited partners was formed. The following month the Committee commenced an arbitration proceeding which was ultimately settled and discontinued June 30, 1966 in favor of a settlement agreement entered into by the Committee, Associates, Messrs. Siegel and Young and the Franchard Corporation.[5]

By the terms of the settlement the general partners agreed to relinquish some or all of their interests in Associates and to surrender certain of their other rights in the partnership. In addition, they agreed to resign as general partners if requested to do so by the Committee. Subsequent to this agreement, letters were sent by the Committee [6] and general partners Louis A. Siegel and Seymour Young, respectively,[7] to the limited partners soliciting their consent to the June 30 agreement to settle the arbitration, and their approval of the proposed terms of settlement noted above. Although there is some dispute, it appears that approximately 65 per cent of the limited partners executed the solicited consents and approvals. Finally, in 1968, the two properties were

1. Defs. Exh. C, attached to Affid. of Louis A. Siegel (dated March 24, 1970).

2. Defs. Exhs. A and B, respectively, attached to Affid. of Louis A. Siegel (dated March 24, 1970).

3. Defs. Exh. D ¶ 24, attached to Affid. of Louis A. Siegel (dated March 24, 1970).

4. Defs. Exh. E, attached to Affid. of Louis A. Siegel (dated March 24, 1970).

5. Defs. Exh. H, attached to Affid. of Irwin M. Echtman (dated March 24, 1970).

6. Defs. Exh. J, attached to Affid. of Irwin M. Echtman (dated March 24, 1970).

7. Defs. Exhs. F and G, attached to Affid. of Louis A. Siegel (dated March 24, 1970).

sold with the consent of approximately 65 per cent of the limited partnership interests.

Plaintiffs' decedent as purchaser of 7½ shares in Associates, all of which were disposed of by May 17, 1965, commenced this action against defendants alleging, *inter alia,* violations of Section 17(a) of the Securities Act of 1933, violations of Section 10(b) of the Securities Exchange Act of 1934, and infractions of Section 352–e of the New York General Business Law, McKinney's Consol. Laws, c. 20.

In moving for summary judgment dismissing the complaint, defendants urge that:

1) the plaintiffs and each member of the class they purport to represent have waived their right to sue and are estopped from maintaining this suit;

2) the plaintiffs and those whom they seek to represent have been guilty of laches and are consequently barred from bringing this action; and

3) the plaintiffs lack standing to maintain the derivative claim set forth in the third count of their complaint.

With regard to the first issues of waiver and estoppel, it should be noted that the original partnership agreement provides that all disputes or controversies arising out of the agreement "be determined and settled by arbitration in New York City in accordance with the Rules of the American Arbitration Association".[8] In addition, it appears that the demand for arbitration placed squarely in issue defendants' alleged breach of trust, prospectus misrepresentations and omissions, and liability for violations of the federal securities laws.[9] Indeed, the relief specifically requested in the demand was cancellation of the limited partnership agreement and enforcement of "the remedies and relief provided for

in the Securities Act of 1933 and the Securities and Exchange Act of 1934. * * * * "[10]

Defendants therefore contend that the June 30 settlement entered into by the Committee and consented to by some of the shareholders precludes plaintiffs and those they seek to represent from maintaining this action. Any apparent force to this argument is overcome by closer scrutiny of the facts.

■ In the first place, the agreement—which merely withdrew, with prejudice, the petition for arbitration— contained no disclaimer of rights secured to litigants under the federal securities laws. For reasons to be noted *infra,* it is doubtful whether such a disclaimer, even if it did exist, would be valid. In addition, since none of the correspondence sent to the limited partners made reference to defendants' possible liability under these laws or the New York General Business Law, it is inconceivable how these investors could have waived their rights to sue thereunder. Only the demand for arbitration, copies of which were *not* sent to the investors, made reference to the alleged violations. Thus, since it has not been shown that the investors knew of the alleged infractions, it is absurd to suggest that they waived their rights to recover under both federal and state law. In view of the facts that arbitration never occurred, hearings were never conducted, and correspondence was silent as to violations and rights, how can it be said that an entire body of allegedly defrauded investors is remediless merely because some of them entered into an agreement embodying an implicit waiver of federal and state rights created specifically to protect the public against the violations alleged herein?

It should further be noted that the demand for arbitration named Associ-

8. Defs. Exh. D ¶ 31, attached to Affid. of Louis A. Siegel (dated March 24, 1970).

9. Defs. Exh. C ¶¶ 9 and 14, attached to Affid. of Irwin M. Echtman (dated March 24, 1970).

10. *Id.* at ¶ 15.

ates as the exclusive defendant. Thus, even though the settlement agreement was signed by other of the defendants named herein, it still amounted to a withdrawal of a demand to arbitrate against Associates. It would be a breakdown in deductive reasoning to infer from an agreement to withraw a demand for arbitration against one party that all frauds allegedly committed by other related parties are expunged.

■ Defendants further contend that plaintiffs are estopped from suing because 33 per cent of the limited partners authorized the Committee to maintain the arbitration proceeding and 65 per cent of the partners consented to the settlement thereof. Assuming the accuracy of these numbers, it has not been explained why, nor has independent research uncovered any legal principle whereby, such ratifications and consent absorb the rights of the non-consenting partners. Moreover, since it has not even been established that the consenting partners have waived their rights to sue under the statutes, it is preposterous to suggest that partners never authorizing Committee action on their behalf are estopped from bringing this suit.

In any event, the Court has grave doubts as to whether the agreement to arbitrate contained in the partnership agreement would be binding, since it appears to be an unlawful attempt to make an in futuro bargain to waive a party's right to select a judicial forum. 15 U.S.C. § 77n; Wilko v. Swan, 346 U.S. 427, 434–435, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Moran v. Paine, Webber, Jackson & Curtis, 389 F.2d 242, 245–246 (3rd Cir. 1968). This, of course, should be distinguished from the permissible practice of submitting an existing controversy to arbitration. Moran v. Paine, Webber, Jackson & Curtis, su-

pra at 246; see Wilko v. Swan, supra at 346 U.S. 438, 74 S.Ct. 182. Thus, defendants' reliance on Moran, supra, is entirely misplaced since the appellant therein "voluntarily submitted her cause under the 1934 Securities Exchange Act to arbitration, * * * and a valid award having been made thereon, * * waived her right" to relitigate the issue. Moran v. Paine, Webber, Jackson & Curtis, supra 389 F.2d at 246. In the instant case the demand for arbitration was withdrawn, the issues were neither litigated nor developed at a hearing, and an award was never made. More controlling distinctions between two situations could hardly be imagined.

■ Finally, and perhaps the most persuasive reason for rejecting defendants' plea of estoppel and waiver is that the purported settlement flies in the face of two well-reasoned recent opinions by another court in this district and the Court of Appeals for this Circuit. Pearlstein v. Scudder & German, 429 F.2d 1136 (2d Cir., filed July 2, 1970); Cohen v. Tenney Corp., 318 F.Supp. 280 (S.D.N.Y. 1970). Although both of the above-cited cases were factually dissimilar to the instant suit, both opinions make it clear that agreements, settlements and stipulations and releases affecting a party's liability under the federal securities laws are void as against public policy. In Cohen v. Tenney Corp., supra Judge Tyler specifically held that releases purporting to compromise claims under the federal securities acts were void. The Court carefully reviewed the opinion of the Circuit Court in Pearlstein v. Scudder & German, supra, and concluded that since Section 29(a) of the Securities Exchange Act, 15 U.S.C. § 78cc(a),[11] prohibited a party from waiving compliance with the Act, the same must be true of the parallel provision embodied in Section 14 of the 1933

---

11. Section 78cc(a) of Title 15 of the United States Code provides:
 "Any condition, stipulation, or provision binding any person to waive com-

pliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."

Securities Act, 15 U.S.C. § 77n.[12] In short, the court concluded that these provisions are apparently intended to make void any final settlement of actions charging securities law violations short of litigation. Cohen v. Tenney Corp., *supra.*

██ Having concluded that plaintiffs have not waived their right to maintain this suit, we turn to defendants' contention that the complaint should nevertheless be dismissed because the plaintiffs and those whom they seek to represent are guilty of laches.

This contention is rejected as premature since central issues of fact required to substantiate this defense have not been proven. Although it is not disputed that plaintiffs' decedent purchased his shares in 1964 and disposed of them in 1965, it is neither admitted nor proven that he had any knowledge of the facts or actual circumstances relating to the alleged statutory violations as early as 1963. Similarly, it has not been proven that any of the limited partners whom plaintiffs seek to represent were aware at an earlier date of the statutory infractions alleged herein. The mere fact that the investors knew of Associates' financial difficulties as early as January 1963, when they formed the Executive Committee to try to protect their interests, would not by itself justify a court imposed ruling that suit should have been commenced at an earlier date. It cannot seriously be suggested that as a matter of law the equitable statute of limitations imposed by the doctrine of laches started to run in 1963 when the investors learned of Associates' difficulties. This is especially true since none of the communications sent to the investors specified or even referred to the violations alleged in the complaint here-

in. Moreover, the Committee's action or inaction, which terminated after three years with an agreement to withdraw the original demand for arbitration, may well have been the motivating force to defer litigation in the hope of a fair settlement. As late as 1967, the year the instant action was commenced, the settlement worked out by the Committee was still being urged upon the limited partners. From the foregoing, it seems clear that defendants have certainly not set forth sufficient facts constituting an "inexcusable delay in instituting suit plus prejudice resulting therefrom" as would warrant dismissal of an action. Tobacco and Allied Stocks, Inc. v. Transamerica Corp., 143 F.Supp. 323, 328 (D. Del.1956). I further find the doctrine of laches inapplicable at this time because there is no proof that while plaintiffs' decedent or any other limited partner had knowledge of his rights under the statutes, he refused to take the necessary steps to enforce them. Walpert v. Bart, 280 F.Supp. 1006, 1017 (D.Md. 1967), aff'd, 390 F.2d 877 (4th Cir. 1968).

Finally, plaintiffs "seek leave * * to withdraw the third cause of action based upon the derivative count." [13] Accordingly, the Court orders that such request be granted and that the derivative count be dismissed.

We next consider plaintiffs' motion under Fed.R.Civ.P. 23 for an order designating the underlying action a class action on behalf of those persons who purchased securities of Associates after receiving written sales literature pertaining to that offering.

 In ordering that a suit proceed as a class action, the Court must be satisfied that: 1) the class is too numerous to make joinder practicable; 2)

---

12. Section 77n of Title 15 of the United States Code provides:

"Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the

rules and regulations of the Commission shall be void."

13. Page 6 of Plaintiffs' Additional Memorandum of Law in Support of the Rule 23 Motion and in Opposition to the Summary Judgment Motion.

there exist questions of law or fact common to the class; 3) the claims of the representative parties are typical of the claims of the purported class; and 4) the representatives will fairly and adequately protect the interest of the class. Fed.R.Civ.P. 23(a). In addition, in suits like the instant one the Court must further find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)' (3).

■ There is little dispute that there are too many parties to make joinder practicable. In addition, it appears that class determination would be particularly appropriate when, as here, there is a readily identifiable class complaining of a common misrepresentation made in an identical prospectus in violation of the same statutes. Thus, when it is alleged that hundreds of investors were damaged as a result of having been uniformly misled by the same false and misleading prospectus which induced them to purchase similar securities in the same organization, the existence of common questions of law and/or fact is inevitable. The proof required of each plaintiff in order to establish liability is identical.

From the foregoing it seems equally clear that plaintiffs' claims are typical of those of the class they seek to represent and that the common questions of law or fact predominate over any member's individual claim. Plaintiffs will be suing on the same securities to recover for the same statutory violations based upon the same alleged prospectus misrepresentations and omissions. Although there may exist individual issues such as "reliance" and the quantum of damages, it will nevertheless be more efficient to permit the more complex issues of fraud and liability for securities laws violations to be litigated by the class. Green v. Wolf Corp., 406 F.2d 291, 301 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 566 (2d Cir. 1968); Berland v. Mack, 48 F.R.D. 121, 128 (S.D. N.Y. 1969); Weiss v. Tenney Corp., 47 F.R.D. 283, 292 (S.D.N.Y.1969); Fogel v. Wolfgang, 47 F.R.D. 213, 217 (S.D.N. Y.1969).

■ In conclusion, the Court finds that when, as here, an alleged cause of action exists in favor of numerous investors, predicated upon identical acts of misconduct in violation of the same laws, class determination should be liberally permitted since "it is always subject to modification should later developments * * * so require." Green v. Wolf Corp., *supra* 406 F.2d at 298; *accord*, Eisen v. Carlisle & Jacquelin, *supra* 391 F.2d at 563; *see* Berland v. Mack, *supra* 48 F.R.D. at 125.

A word should be noted about defendants' contention that because plaintiffs' counsel is attorney of record in a number of similar suits which have been pending for a number of years, they are incapable of adequately representing and protecting the interests of the class they seek to represent herein. Attorneys should be mindful of how meaningless and sometimes elusive naked figures and statistics extracted from a docket sheet can be. They should also avoid submitting such statistics and numbers to the Court absent more probative and convincing proof of the accusations and conclusions they seek to base thereon. If defense counsel opposes class determination because of the incompetence of counsel, it is incumbent upon them to furnish the Court with evidence more probative than an affidavit which recites some statistics cleverly extracted from a sometimes inaccurate docket sheet.

We turn now to defendants' final objection to class determination—that the second count of the complaint, alleging violations of Section 352-e of the New

York General Business Law, cannot be maintained on behalf of the limited partners who purchased their interests prior to January 1, 1961, the effective date of that statute.

 Insofar as such investors may seek to become part of the purported class, they may be excluded from representation on the second count by the entry of an appropriate order permitting maintenance of the class action on both the first and second counts of the complaint with a specfic proviso excluding pre-1961 purchasers from representation on the second count. That is, for purposes of the alleged 352–e violation, a sub-class, consisting of the post-1961 purchasers, will be created. See Fed.R. Civ.P. 23(c) (4); Green v. Wolf Corp., *supra* 406 F.2d at 301.

With regard to notice of the class action, the parties are directed to settle an order similar to that ordered by Judge Mansfield in Korn v. Franchard Corp., 50 F.R.D. 57, 59–60 (S.D. N.Y.1970). More specifically, it is ordered that notice be given by first-class mail at plaintiffs' expense to members of the proposed class at their last known address as shown on the books and records in defendants' possession. It is further ordered that provision be made for the simultaneous mailing of a form Proof of Claim to be executed and returned by the members of the class.

The notice will omit any language intimating that unless the proofs of claim are returned by the members their claims will otherwise be barred. Finally, the notice should "not be limited to members presently holding their partnership interest since the class would presumably also include those who had purchased in reliance upon the alleged fraudulent prospectus and later sold their interests." Korn v. Franchard, *supra* 50 F.R.D. at 60.

Accordingly, and for the foregoing reasons, plaintiffs' motion to designate this action as a class action is granted, and defendants' motion for summary judgment dismissing Counts one and two of the complaint is denied.

Settle order on notice in accordance herewith.