MARY WATERS, Respondent, *v.* ALMA COLLINS, Appellant.

Third Department, March 27, 1958.

*H. E. Blodgett* for appellant.

*William W. Millington* and *Gordon K. Garlick* for respondent.

Gibson, J.  Plaintiff has recovered in a negligence action.  As a defense to the action, defendant pleaded a release.  By reply, served pursuant to order, plaintiff alleged that the release was procured by fraud.  The issue thus tendered was tried with that as to negligence and the jury rendered separate verdicts upon the two issues. We affirm the facts but find legal error which requires reversal.

Plaintiff was injured when a door at the top of an outside stairway from the basement of defendant's house closed and

struck plaintiff as she was descending the steps. The parties were friends of some years' standing and on the day of the accident plaintiff had come to defendant's home at defendant's suggestion so that they might do their laundry at the same time by the use of defendant's washing machine, as they had done on previous occasions. The accident occurred as plaintiff returned from the last of three or four trips from the basement, made for the purpose of taking clothes outside to dry. One of the two doors lay flat upon or parallel to the ground when opened and the other — that which struck plaintiff — opened against a porch so that it stood vertically upon its hinges and, when open, was customarily secured in that position by a hook. There was evidence from which the jury could find that defendant opened the door in question after plaintiff's arrival and failed to fasten the hook. That plaintiff was not informed of this condition is uncontroverted. There was also testimony that the day was windy.

Upon the issue of negligence the court charged without exception, that defendant "owed to the plaintiff no greater duty than to avoid the maintenance of traps, hidden dangers, or wanton and reckless conduct, to which the plaintiff might be exposed, unless she was first warned of that particular danger by the defendant herself" and the jury was instructed to determine whether the condition of the door on the particular occasion "constituted some form of a trap or hidden danger to which the plaintiff was exposed, of which she had no notice." Upon the issues thus submitted the verdict seems to us supported by the preponderance of the evidence. Indeed, the unsecured door was not greatly dissimilar from the operating mechanism of some forms of trap, except that no act of plaintiff was required to spring it. That it might well fall from some other cause and inflict injury was foreseeable and the purpose of the hook was obviously to prevent its falling. The cases upon which appellant relies do not seem to us in point. Here there was, or so the jury might find, in the position and unsecured condition of the door, a trap or hidden danger, created by an affirmative act of the defendant, of which it was her duty to warn her licensee. (*Mayer* v. *Temple Properties*, 307 N. Y. 559, 564; *Higgins* v. *Mason*, 255 N. Y. 104, 109; Restatement, Torts, §§ 331, 334.) The verdict was not excessive.

However, we find error requiring reversal in the submission of the issue as to fraud in the procurement of the release. The release was obtained by a representative of defendant's insurance carrier and the consideration therefor was $1,050, the estimated amount of plaintiff's medical and hospital expense. (Thereafter plaintiff returned to the hospital for major recon-

structive surgery.) Testifying to his conversation with plaintiff, the adjuster said, "we went into the aspects of liability, and I said to my knowledge there was no liability and that we felt that we could pay the hospital bill and medical bills." Plaintiff testified that the adjuster stated there was no liability, "but that inasmuch as the insurance company felt sorry for me having lost that much salary that they were going to make it up by paying the hospital bill". She testified further: "He said it was just something they were doing because they felt sorry for me. Actually I had no action for liability." The adjuster also said, according to plaintiff's testimony, that he had sent two engineers to examine the property and that "they could find no cause for liability, that the stairs were clean." At that time, however, the adjuster knew that the claim did not relate to the condition of the stairs but was that the door fell and struck plaintiff.

In response to defendant's request to charge, the court said that one of the things the jury would have to determine was whether the adjuster's opinion was correct, but this was immediately followed by the instruction, "not whether his statement was right or wrong, but whether that statement was an inducement for signing these papers and constituted fraud and deceit." Defendant excepted and then requested the charge "that the jury must find that any opinion he gave her was false, and if he gave her a correct opinion then she couldn't have been, as a matter of law defrauded." This request the court declined to charge.

While the request did not, in our view, comprehend the true issue with complete accuracy, we think that the effect of the ruling and of the instruction which immediately preceded it was to take from the jury the true crux of the issue. That was, in our view, whether the adjuster fraudulently misrepresented his actual opinion. An informed answer to that question may perhaps involve the sense in which the term "liability" was used and understood. We may note that often, in the common language of negotiation, the denial of liability, at least in cases purely or largely factual, is intended to indicate that no fact exists upon which liability may be predicated. In this case it may be of some significance that, according to plaintiff, the supposed absence of liability was based, in the adjuster's view, upon the engineers' finding that the steps were clean although the adjuster knew that the true basis of the claim was the nature, condition and position of the door at the time of the accident.

We do not agree with appellant's contention that if and because the adjuster's statements constituted an opinion, the release is therefore invulnerable to attack. We perceive no reason why, the other traditional elements of a fraud case being present, relief may not be had on the basis of a fraudulent misrepresentation of one's opinion comparably to the case of a misrepresentation of intent. (See *Adams* v. *Clark*, 239 N. Y. 403.) A finding that the adjuster's true opinion was contrary to that which he expressed would be in no way inconsistent with the facts and circumstances of the settlement negotiations as revealed by this record. In the submission of this case, however, the definitive issue was lost sight of and after determining the issues of negligence and contributory negligence, which the court suggested be first considered, the jury was required to consider little more in order to vitiate the release.

The judgment should be reversed, on the law, and a new trial ordered, with costs to appellant to abide the event. The purported appeal from the order entered on the minutes denying defendant's motion to set aside the verdict and for a new trial should be dismissed, without costs. (*Arnold* v. *Yates*, 253 App. Div. 840, motion for leave to appeal denied 278 N. Y. 735; and see *Le Glaire* v. *New York Life Ins. Co.*, 5 A D 2d 171.)

FOSTER, P. J., BERGAN and COON, JJ., concur.

Judgment reversed, on the law, and a new trial ordered, with costs to appellant to abide the event.

The purported appeal from the order entered on the minutes denying defendant's motion to set aside the verdict and for a new trial dismissed, without costs.