Barnet John JUNKER, Plaintiff,

v.

MIDTERRA ASSOCIATES, INC., Gregg
Kildow, II and Joseph F. Mannix,
Defendants.

No. 67 Civ. 462.

United States District Court,
S. D. New York.
March 5, 1970.

Andrew E. Kuchinsky, New York City, for plaintiff.

White & Case, New York City, for defendants, Rayner M. Hamilton, New York City, and Carl D. Liggio, New York City, of counsel.

MANSFIELD, District Judge.

In this action pursuant to § 12(1) and (2) of the Securities Act of 1933 ("the Act") by a purchaser of an undivided fractional interest in an oil and gas leasehold against the seller and its representatives, for recovery of the purchase price on the ground that the interest constituted an unregistered security sold in violation of the Act, plaintiff moves for summary judgment.

Defendants do not appear to deny that plaintiff's interests constituted a security within the meaning of the Act or that mails and interstate facilities were used in selling it. They maintain, however, that pursuant to § 4(2) of the Act the interest was exempt from registration

because it was not part of an issuer's public offering. Defendants also contend that plaintiff waived his rights under § 12 by accepting income from his leasehold interest after learning that the interests were not registered and by seeking restitution of the purchase price, and that his claim is in any event barred by the Act's one-year statute of limitations.

Certain facts are undisputed. Defendant Midterra Associates, Inc. ("Midterra") operates oil and gas leases in various parts of the United States, arranging for financing, drilling, production, marketing and distribution of income to holders of interests in such leases. After several conferences with defendant Mannix, a Midterra representative, plaintiff entered into a contract with Midterra dated February 2, 1966, whereby he paid $13,200 for an undivided 6.25% interest in four specified wells located in Springfield Township, Erie County, Pennsylvania. Thereafter he made additional payments of $899.94. Midterra also operated other wells drilled into the same geological structure, which were independently financed by other investors and not included in the four-well unit in which plaintiff acquired his 6.25% undivided interest. Defendants sold undivided percentage interests in these other well units to others. More specifically, if all such separate units and purchasers of fractional interests in them were aggregated, there would be 41 other purchasers and Midterra may have offered to sell such interests to still another 40 or 50 persons.

It is plaintiff's contention that defendants' activities in selling the interests were all part of one continuous offering, which was public in nature since sales and offers to sell, when treated as an aggregate, were made to almost 100 people and selling documents were used that plaintiff claims amounted to prospectuses. Plaintiff further contends that the action (commenced on February 2, 1967) was instituted within the one-year statutory period, since the date of the contract was February 2, 1966, it was not finally executed until February 8, 1966, and the leasehold interest was not received in the mails by plaintiff until August 8, 1966. With respect to defendants' claim of waiver, plaintiff relies on § 14 of the Act which renders void "any condition, stipulation or provision binding any person acquiring any security to waive compliance with any provision of this title or of any of the rules or regulations of the Commission."

In reply defendants have offered affidavits and other evidence to the effect that the various units, while having a common geological structure, were not integrated for purposes of financing. Each was treated as an independent entity, so that there were only 18 purchasers of undivided interests in the four-well unit in which plaintiff acquired his interest. Defendants also offer evidence to the effect that in selling such interests in the various well units, they did not offer them generally to the public but scrupulously limited themselves to discussions with sophisticated buyers who were found after careful screening to be knowledgeable in the field of oil and gas leases, refusing to sell to some prospective investors considered by them to be not sufficiently informed to appreciate the nature and extent of the risks involved.

■■ In considering plaintiff's motion for summary judgment we are bound by the basic principle that the existence of any genuine issue of material fact precludes the granting of relief, Rule 56(c), F.R.Civ.P.; United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), and that in deciding whether such issues exist we must view the evidence in the light most favorable to the party opposing the motion —in this case the defendants—resolving all doubts in their favor. Empire Electronics Co. v. United States, 311 F.2d 175, 180 (2d Cir. 1962).

■ Applying these standards here it is clear beyond any serious question that issues of fact have been raised that are patently genuine and go to the very heart of plaintiff's case, i.e., the nature of the offering and whether it was public or private. Long ago in SEC v. Ralston Purina, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953), the Supreme Court ruled that the question of whether an offering is public or private is one of fact which depends in each case, among other things, upon "the knowledge of the offerees" and "their need for the protections afforded by registration," and that "there is no warrant for superimposing a quantity limit on private offerings as a matter of statutory interpretation" (pp. 125–126, 73 S.Ct. p. 985). In short, the issue is not one that can be resolved by rule of thumb or use of a "magic number." In fact the SEC itself has stated:

"Whether a transaction is one not involving any public offering is essentially a question of fact and necessitates a consideration of all surrounding circumstances, including such factors as the relationship between the offerees and the issuer, the nature, scope, size, type, and manner of the offering." (SEC Release No. 33–4552, 22 Fed.Reg. 11316 (1962))

We recognize that plaintiff has offered evidence tending to show that the offerings of interests in the different units were all part of one continuous operation. He has pointed, for instance, to the fact that Exhibit A to the investment contract executed by him and Midterra bears the title "10 Well, N.W. Pennsylvania Prospect" indicating that another six wells were considered part of the same enterprise. He also points to the fact that the map attached thereto showed 15 adjacent or contiguous leaseholds at which drilling was contemplated and that within five weeks after his execution of the contract, defendant Kildow, a Midterra representative, offered him an additional fractional undivided interest in adjacent unit No. 3. He has offered deposition testimony to the effect that in selling such interests the Midterra representatives treated the leaseholds as one project or enterprise, with the proceeds from sale of other leaseholds being put into a common account with the "4 well unit" in which plaintiff invested. From this plaintiff argues that the different offerings were actually all part of a "single plan of financing involving the same class of security" and the "same type of consideration" in which the offering was made at about the same time and for the same general purpose. See SEC Release No. 33–4552 *supra.*

In reply to the evidence offered by plaintiff, defendants have furnished affidavits of various officers and representatives of Midterra (Tommy Yett, Secretary-Treasurer; Gregg Kildow, II; Joseph F. Mannix) and plaintiff's answers to defendants' interrogatories. The Kildow and Mannix affidavits state that the "4 well unit" in which plaintiff invested was integrated only to the extent that the geological underpinnings were of an identical and adjacent nature, that the sale of gas interests in the separate units was in no way integrated and in fact the treatment of each unit was on an individual basis unconnected with the sale of other units. The affidavits further furnish detailed descriptions of the manner in which sale of undivided interests to others were made, which reveal that such sales were made only to knowledgeable persons, usually with experience in investment in oil and gas interests, and after a thorough personal discussion in which the nature of the unit and the risks involved were described. In the case of the plaintiff himself, for instance, Mr. Mannix states under oath that he had several meetings and conversations with plaintiff, which indicated that plaintiff had experience in oil and gas lease investments. Some investors were personal or social friends of one or more of the defendants. Other persons desiring to invest were

turned down because of their lack of sufficient understanding.

■ Although the burden of establishing that the offering was a private one exempt under § 4(2) of the Act may ultimately rest upon the defendants, SEC v. Culpepper, 270 F.2d 241 (2d Cir. 1959), at this stage we must construe the evidence in the light most favorable to them, United States v. Diebold, Inc., *supra*. In view of the sharp conflict on the issue appearing in the affidavits, such a standard precludes us from denying defendants their day in court. We cannot on this record say that they would be ultimately unsuccessful in sustaining their burden.

■ In any event, a further genuine issue is presented as to whether plaintiff, by accepting and keeping income from his 6.25% interest after seeking restitution, waived his rights under § 12 of the Act. Plaintiff relies on the non-waiver provision found in § 14 of the Act, which renders void any "condition, stipulation or provision" waiving compliance with the Act. That section was directed at the terms of sale and intended to prevent professional broker-dealers from circumventing the prohibitions of the Act by inducing unsophisticated buyers to contract away their rights. It does not prohibit the type of waiver alleged here.

In Wilko v. Swan, 346 U.S. 427, 435, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953), the Supreme Court pointed out that such non-waiver provisions, counterparts of which are found in all six federal securities acts (see, e.g., § 29(a) of the Securities Exchange Act) are based on the assumption that the buyer at the time of purchase "is less able to judge the weight of the handicap the Securities Act places upon his adversary," thus implying that the section would not prohibit waiver after the buyer became alerted to the precise illegality involved.

Indeed the non-waiver provisions have been held not to apply to subsequent conduct on the investor's part amounting to an intentional relinquishment of a known right after learning of the violation entitling him to recover. See, e.g., Royal Air Properties, Inc. v. Smith, 312 F.2d 210 (9th Cir. 1962), later decision, 333 F.2d 568 (9th Cir. 1964); Straley v. Universal Uranium & Milling Corp., 289 F.2d 370 (9th Cir. 1961); Dale v. Rosenfeld, 229 F.2d 855, 859 (2d Cir. 1956). In denying plaintiff's motion to strike the similar defense of laches in Marth v. Industrial Incomes, Inc. of North America, 290 F.Supp. 755, 758–759 (S.D.N.Y. 1968), we stated:

"An estoppel defense based upon plaintiffs' receipt of dividends, see Fitch v. United Royalty Co., 143 Kan. 486, 55 P.2d 409 (1936), their exercise of voting rights, Straley v. Universal Uranium and Milling Corp., 289 F.2d 370 (9th Cir. 1963), and other assertions of shareholders' rights, see Note, 73 Yale L.J. 1477, 1480 (1964), after the acquisition of knowledge, has been upheld in rescission actions. While Professor Loss has quite properly discredited some of these cases as exalting talismanic technicalities over the equities of the case, see III Loss, Securities Regulation 1676–80 (1961 ed.), in view of the wide variety of factual contexts in which this defense appears, it should not be rejected at this stage. * * * [s]ince the laches defense based upon the failure to assert claims within a reasonable time after discovery is one that may present substantial questions of fact and of law * * *."

The same principles require us here to deny plaintiff's motion for summary judgment.

The motion is denied.

It is so ordered.