Abraham **COHEN** and Esther Friedlander, as Co-Executors of the Last Will of Raphael Cohen, Deceased, and Alexander Theoharous on behalf of themselves and all other Purchasers of Securities in 52 Broadway Realty Company, similarly situated, Plaintiffs,

v.

**TENNEY CORPORATION,** Jerry M. Tenney, Jack Fechter, Belle Bergner, Louis Monas, Tenney Broadway Realty Corporation, Tenney Securities Corporation, Julia Monas, Bodin, Gottlieb & Charney, Zev William Wolfson and Broadway Equities, Inc., Defendants.

**No. 67 Civ. 4187.**

United States District Court,
S. D. New York.

July 17, 1970.

Sands, Geller & Webb, by Ira Jay Sands, New York City, for plaintiffs.

Tenzer, Greenblatt, Fallon & Kaplan, by Edward L. Sadowsky, New York City, for Tenney defendants.

Elson & Halperin, New York City, for defendant Jack Fechter.

Mulligan, Newcomb & Jacobson, by Wellington A. Newcomb, New York City, for defendants Zev William Wolfson and Broadway Equities, Inc.

## OPINION

TYLER, District Judge.

Plaintiffs were limited partners in a real estate syndication, 52 Broadway Realty Company, which was organized in 1962. In this litigation they are suing the general partners and original limited partners,[1] the legal and business counsel of the partnership and various corporations and individuals who did business with the general partners. Plaintiffs charge that the defendants entered into a common scheme to defraud the plaintiffs and other limited partners of 52 Broadway through the publication of two brochures in 1962 which solicited funds for the syndication. Plaintiffs allege 97 omissions and mistatements of material fact in their complaint and on that basis bring suit under Section 17 of the 1933 Securities Act, Section 10(b) of the 1934 Securities and Exchange Act, Sections 352–c and 352–e of the New

York General Business Law, McKinney's Consol.Laws, c. 20, and the common law. The defendants now raise the affirmative defense of a general release and move for summary judgment.

The syndication did not turn out to be a profitable venture. There was a correspondence between the general and the limited partners dealing with the collapse of the venture and suggesting various schemes to reduce losses. The final resolution was a distribution of checks made by the general partners to the limited partners in July 1967 and bearing on the back a general release of the general partners in which endorsement of the check also acted as a signature on the release. Both named plaintiffs in this action signed the general release. By this instrument the general partners claim release and move for summary judgment in their favor. Other defendants Jerry Tenney, the Tenney Corporations and Wolfson make similar motions claiming that the complaint sets them up as joint tortfeasors with general partners. Thus, looking to the law of New York, under which they claim that a release to one joint tortfeasor is a release to all, they claim to be equally released with the general partners.

Plaintiffs produce a variety of replies to this affirmative defense, only two of which need concern us on this motion. First, plaintiffs contend that claims arising under the federal securities acts cannot legally be compromised by release and therefore this release is void insofar as it relates to such claims. Second, it is contended that the release was fraudulently obtained and may be rescinded.

### I. Release under the Securities Acts.

The Court of Appeals for this circuit has recently interpreted Section 29(a) of the Securities Exchange Act, 15 U.S.C. § 78cc(a)[2], in Pearlstein v. Scud-

---

1. Fechter, Bergner and Louis Monas were the general partners and Fechter, Bergner, Louis and Julia Monas were the original limited partners.

2. "Any condition, stipulation, or provision binding any person to waive compliance

with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void." 15 U.S.C. § 78cc(a)

der & German, 429 F.2d 1136 (2d Cir. July 2, 1970), and I find its ruling controlling here. In that case a broker had violated Section 7(c) of the 1934 Securities and Exchange Act, 15 U.S.C. § 78g (c), by failing to demand full payment from purchaser under the terms of Regulation T of the Federal Reserve System which is promulgated pursuant to Section 7(c). There was negotiation between the parties on the extension of credit and a brief lawsuit was had which ended in a stipulation of settlement between the parties by which the broker extended credit to the purchaser.

It was argued that this stipulation gave the parties a "fresh start" and wiped from the slate any previous claims that they might have had against each other. The Court of Appeals disagreed, holding that, "it would * * * contravene public policy to give the stipulation conclusory effect. Section 29(a) of the Securities Exchange Act holds void any stipulation obligating a party to waive compliance with the Act." 429 F.2d at 1143.

The ruling in *Pearlstein* goes to the roots of the policies which give vitality to settlements and stipulations of all sorts. Settlements have the advantage that where the parties to a controversy are able to come to an agreement they can legally lay their dispute to rest without the cost in time, money and effort which litigation demands of both the parties and the court. Further, the parties are able to close the books on the past and plan for the future without the uncertainty and delay which trial might entail. At least in the ideal settlement, both parties have knowledge of the possible claims between themselves, and both are able to deal without financial pressure which the settlement might relieve. Ordinarily in such circumstances, it is of no concern to the court or the public what terms such a knowing and voluntary settlement of a strictly private controversy may contain.

In *Pearlstein* the Court of Appeals was willing to concede *arguendo* that the parties had made a knowing and voluntary settlement unstained by financial duress. Nevertheless, the Court felt that the Congressional policy expressed by the Act, the interest which the community as a whole has in the regulation of the securities market, was a bar to giving the stipulation binding legal effect. Section 29 (a) is indeed an *in terrorem* provision apparently making void any final settlement short of litigation. *See* Note, 73 Yale L. J. 477 (1964).

I can see no significant difference between the general release at issue in this case and the stipulated settlement in *Pearlstein*. If anything, the stipulation of settlement, presumably reached after discussion with counsel, would be taken to show more knowledge of the issues settled than a general release. There may have been neither external nor subjective financial pressure present in the granting of the release, but the circuit court has found that to be beside the point. It is obvious that a release fits within the general language of Section 29(a) as a provision which purports to bind the signer to waiving the released's compliance with the provisions of the Act. It is equally clear that the force given to the language of Section 29(a) must also be given to the parallel expression of Congressional policy in Section 14 of the 1933 Securities Act, 15 U.S.C. § 77n.[3]

In the light of the public policy controlling enforcement of the 1933 Securities Act and the 1934 Securities and Exchange Act as expressed in *Pearlstein*, I hold that general releases here offered as an affirmative defense to violation of those Acts must be dismissed as void. Defendants' motion for summary judgment on the claims under the federal securities laws is denied.

3. "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." 15 U.S.C. § 77n.

## II. *State and Common Law Causes of Action and the Contention of Fraud.*

■ The bar to the conclusory effect of the releases does not extend to the state and common law causes of action where there is no enunciated non-waiver policy or provision. Pawgan v. Silverstein, 265 F.Supp. 898 (S.D.N.Y.1967).

Plaintiffs' first line of defense against the effect of the releases on their state and common law action appears to be fraud. As always in this litigation, the parties are determined that they will "[b]y indirections find directions out" and to that end have submitted typically turgid and confused papers of a fully Polonian quality. The contention of fraud drifts across the sky appearing now like a camel, now like a weasel and at times disappearing altogether. It would be a worthless exercise to attempt to be precise about just what fraud in the obtaining of the releases plaintiffs presently claim. This may well be an issue on which discovery should be granted before summary judgment or partial dismissal of the complaint is ordered since many of the crucial facts may be now known only to the defendants. *See* Schoenbaum v. Firstbrook, 405 F.2d 215, 218 (2d Cir. 1968).

■ In fairness, I must assume that plaintiffs do claim some sort of fraud in the obtaining of the general release. If they can prove it, that should be sufficient to remove the bar which the release sets up to their non-federal claims. Goostree v. P. Lorillard Co., 26 Misc.2d 109, 202 N.Y.S.2d 456 (Sup.Ct., N.Y.Cty. 1960); Waters v. Collins, 5 A.D.2d 358, 171 N.Y.S.2d 1020 (3d Dept. 1958); In Re Cohen's Estate, 12 Misc.2d 784, 177 N.Y.S.2d 245 (Surrogates Ct., N.Y.Cty.), aff'd 6 A.D.2d 1033, 178 N.Y.S.2d 1017 (1st Dept. 1958).

Since the litigation must go forward on the federal causes in any case, the best course at the present time will be to retain the non-federal causes of action, though with the clear warning that the theory and allegations of fact on which the fraud charge rests must be clarified and developed before a pre-trial order is submitted for approval. The motion for summary judgment on the state and common law causes of action is denied without prejudice to its later renewal should the results of discovery and fuller formulation of the issues so warrant.

It is so ordered.

## ON MOTION FOR REARGUMENT

On July 17, 1970, this court filed its opinion denying the motion of defendants for summary judgment. Upon motion for reargument, made returnable on or after September 8, 1970, the motion is granted but, as will be seen hereinafter, I reach the same ultimate result as that set forth in the July 17th opinion. In addition, defendants' renewed motion for a certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is denied.

■ Preliminarily, it is necessary to discuss the initial argument of plaintiffs' counsel in opposition to the motion for reargument that that motion was not timely filed in accordance with General Rule 9 of this court. Plaintiffs' position is not well taken for the reason that the court specifically permitted an enlargement of the ten day period required by that court rule. See Rule 6(b), F.R.Civ. P. Sometime within the first two weeks of August, counsel for the moving defendants called the chambers of the undersigned and asked when the motion for reargument should be brought on for hearing. Since the undersigned planned to take two weeks holiday in the latter part of August, counsel was informed by a law clerk that the motion should be specifically served and filed for argument on September 18,ʳ 1970 or as soon thereafter as the matter could be reached by the judge. This was done, hence there is no factual basis for plaintiffs' threshold argument that this motion was untimely filed.

Turning to the merits of this motion, without extended discussion, I agree essentially with defendants' basic argument that Part I of my opinion of July

17, 1970 is of questionable validity and does not bear close re-examination. More particularly, I agree that I there read more into the majority opinion of the Court of Appeals in Pearlstein v. Scudder & German, 429 F.2d 1136 (2d Cir. July 2, 1970) than is justified, particularly in the light of some distinguishing factors to be found in this litigation. Accordingly, I specifically repudiate the reasoning and contents of Part I of the July 17th opinion and submit the following reasoning in place thereof:

## I. Release under the Securities Act.

The Court of Appeals for this circuit has recently treated the question of the validity of post-controversy settlements of Securities Acts claims in Pearlstein v. Scudder & German, 429 F.2d 1136 (2d Cir. July 2, 1970) but I do not find that decision controlling here. In that case a broker violated section 7(c) of the 1934 Securities Exchange Act, 15 U.S.C. § 78g (c), by failing to demand full payment from purchaser according to the terms of Regulation T, promulgated pursuant to section 7(c). There was negotiation between the parties on the extension of credit, and a lawsuit was instituted which ended in a stipulation of settlement between the parties by which the broker extended credit to the purchaser.

■■ The stipulation was held void as a waiver of compliance with provisions of the 1934 Act under § 29(a)[1]—which section parallels section 14 of the 1933 Securities Act [2] controlling here—specifically because it "serve(d) only to legalize the very extension of credit which the margin requirements seek to prevent and which suits such as this one serve to discipline." 429 F.2d at 1143. The import of *Pearlstein*, in my view, is not that all settlements of matured claims, short of litigation, are void; but rather that their terms are not necessarily above judicial scrutiny, as the district court in

that case had erroneously ruled. Pearlstein v. Scudder & German, 295 F.Supp. 1197, 1203 (S.D.N.Y.1968). Since the 1933 Securities Act does not require persons aggrieved by violations of its provisions to sue, this general release, purporting to settle an already ripened controversy, is not by its terms void as a matter of law. See Wilko v. Swan, 346 U.S. 427, 438, 74 S.Ct. 182, 98 L.Ed. 168 (1953), relying upon Callen v. Pennsylvania R. Co., 332 U.S. 625, 68 S.Ct. 296, 92 L.Ed. 242 (1947). Moran v. Paine, Webber, Jackson & Curtis, 389 F.2d 242, 245–246 (3d Cir. 1968).

The inquiry, however, does not end here. Judicial hostility toward waivers generally requires that the right of private suit for alleged violations be scrupulously preserved against unintentional or involuntary relinquishment. Otherwise, recognition of settlements would indeed undermine, rather than abet, the cause of effective enforcement of the interest which the community as a whole, as well as the aggrieved individual, has in regulation of securities markets. *Cf.* Wilko v. Swan, *supra,* Pearlstein v. Scudder & German, *supra,* 429 F.2d 1136, see Note, 73 Yale L.J. 1477, 1487 (1964). This court, therefore, must afford the parties opportunity to produce evidence of the circumstances surrounding the obtaining of the release, in the same fashion as discussed in Part II. Accordingly, defendant's motion for summary judgment on the claims arising under the federal securities laws is denied without prejudice to possible later renewal.

In sum, it is apparent that upon this revised reasoning, this court reaches essentially the same result as reached in Part I of the earlier opinion of July 17th. The very nature of this revised reasoning, which obviously relates to factual matters still to be resolved, establishes that an interlocutory appeal under 28 U.

---

1. "Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void." 15 U.S.C. § 78cc (a).

2. "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." 15 U.S.C. § 77n.

S.C. § 1292(b) would resolve no controlling issue of law and would not certainly expedite resolution of this litigation. Further, and in any event, it is specifically noted that the denial of the defendants' motion for summary judgment with respect to the Securities Act claim in this case is without prejudice.

Finally, it should be noted that the opinion of July 17th still applies with respect to Part II thereof, a section which is not attacked on the present motion for reargument.

It is so ordered.