**Joseph ZAPACH and Anna Zapach**

v.

**ELKINS, MORRIS, STROUD & CO.**

**Civ. No. 71–543.**

United States District Court,
M. D. Pennsylvania.

Dec. 14, 1973.

Philip F. Hudock, Hazleton, Pa., for plaintiffs.

Kenneth R. Bayless, Laputka, Bayless, Ecker & Cohn, Hazleton, Pa., Ballard, Spahr, Andrews & Ingersol, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, District Judge.

This matter is before the Court on defendant's motion for summary judgment and plaintiffs' cross-motion for summary judgment and dismissal of defendant's counterclaim.

Plaintiffs, Joseph and Anna Zapach,[1] were brokerage customers of J. H. Brooks & Co. during all relevant times. The defendant, Elkins, Morris, Stroud & Co., subsequently acquired both the assets and liabilities of the Brooks firm. Plaintiffs allege that during 1968 and through October of 1969 they bought and sold securities on margin through the Brooks firm and that Brooks failed to

---

1. Although the complaint lists Joseph and Anna Zapach as plaintiffs, it is conceded that all buy and sell orders were placed by Joseph Zapach alone.

abide by the applicable margin requirements as a result of which plaintiffs claim losses amounting to $31,318.34.

The Securities Exchange Act of 1934 provides for the maintenance of margin accounts in accordance with rules and regulations to be promulgated by the Board of Governors of the Federal Reserve System.[2]

Those rules provide that the customer must deposit sufficient cash or collateral into his account within five business days after a purchase of stock so as to satisfy the current margin percentages.[3] The duty to police the account is placed on the broker, who is empowered to liquidate a customer's account to the extent necessary to meet the margin requirements.[4] If the broker fails to obtain the required cash or collateral, and fails to sell the stock after the permissible five-day period, he renders himself liable for any losses when the purchased stock is eventually sold. Those rules form the basis of the complaint that the defendant did not liquidate plaintiffs' account upon plaintiffs' failure to deposit sufficient funds in their account so as to meet the applicable margin requirements for the purchase of stock. Since the stock allegedly was not sold until sometime after the five-day period and until it had sharply declined in value, plaintiffs claim a loss of $31,318.34, according to their method of accounting. Defendant, on the other band, asserts that the liquidation of plaintiffs' account resulted in a balance owed by plaintiffs of $7,287.07 on the original contracts of purchase. This amount is part of the damages sought in defendant's counterclaim.

2. Securities and Exchange Act of 1934, Sec. 7, 15 U.S.C. 78g(c) provides:

"(c) It shall be unlawful for any member of a national securities exchange or any broker or dealer, directly or indirectly, to extend or maintain credit or arrange for the extension or maintenance of credit to or for any customer—

(1) on any security (other than an exempted security), in contravention of the rules and regulations which the Board of Governors of the Federal Reserve System shall prescribe under subsections (a) and (b) of this section;

(2) without collateral or on any collateral other than securities, except in accordance with such rules and regulations as the Board of Governors of the Federal Reserve System may prescribe (A) to permit under specified conditions and for a limited period any such member, broker, or dealer to maintain a credit initially extended in conformity with the rules and regulations of the Board of Governors of the Federal Reserve System, and (B) to permit the extension or maintenance of credit in cases where the extension or maintenance of credit is not for the purpose of purchasing or carrying securities or of evading or circumventing the provisions of paragraph (1) of this subsection."

3. 12 C.F.R. § 220.3(b)(1)(i).

"A creditor shall not effect for or with any customer in a general account, special bond account subject to § 220.4(i), or special convertible debt security account any transaction which, in combination with the other transactions effected in such account on the same day, creates an excess of the adjusted debit balance of such account over the maximum loan value of the securities in such account, or increases any such excess, unless in connection therewith the creditor obtains, as promptly as possible and in any event before the expiration of 5 full business days following the date of such transaction, the deposit into such account of cash or securities in such amount that the cash deposited plus the loan value of the securities deposited equals or exceeds the excess so created or the increase so caused."

4. 12 C.F.R. § 220.3(e) provides:

"In any case in which the deposit required by paragraph (b) of this section, or any portion thereof, is not obtained by the creditor within the 5-day period specified therein, margin nonexempted securities shall be sold (or, to the extent that there are insufficient margin nonexempted securities in the general account, special bond account, or special convertible security account other liquidating transactions shall be effected in such account), prior to the expiration of such 5-day period, in such amount that the resulting decrease in the adjusted debit balance of such account exceeds, by an amount at least as great as such required deposit or the undeposited portion thereof, the 'retention requirement' of any margin or exempted securities sold: Provided, That a creditor is not required to sell securities or to effect other liquidating transactions specified by this paragraph in an amount greater than necessary to eliminate the excess of the adjusted debit balance of such account over the maximum loan value of the securities remaining in such account after such liquidation."

This entire controversy was apparently resolved on October 13, 1969, by an exchange of general releases, whereby defendant cancelled the asserted balance of $7,287.07 and paid an additional $2,700.00 to the plaintiffs. If the releases are valid, the case is at an end; if not, the plaintiffs may proceed.

To test the validity of the releases, both parties rely principally on Pearlstein v. Scudder and German, 429 F.2d 1136 (2d Cir. 1970), cert. denied, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971). In *Pearlstein*, plaintiffs had purchased bonds on credit and were obligated under Federal Reserve System Regulations [5] to satisfy the balance within seven business days after date of purchase. When payment was not made and before the bonds were sold, defendant broker instituted suit to collect the balance. The suit was settled under a stipulation by which the plaintiffs were given additional time to pay for the bonds. Payment was not made, and, after the bonds were sold at a loss, plaintiffs sued, alleging margin violations. The Court held that the settlement "involve[d] the promise by defendant of a continuation of credit which was illegal

under the Act (Securities Exchange Act of 1934)." *Pearlstein, supra,* at 1142. The Court added that "Section 29(a) of the Securities Exchange Act holds void *any* stipulation obligating a party to waive compliance with the Act." [6] (emphasis supplied) *Pearlstein, supra,* at 1143.

Initially, the *Pearlstein* interpretation of Section 29(a) was construed as an *in terrorem* provision apparently voiding *any* final settlement short of litigation.[7] Cohen v. Tenney Corp., 318 F.Supp. 280 (S.D.N.Y.1970); In Re Cohen's Will, 51 F.R.D. 167 (S.D.N.Y.1970). However, on motion for reargument in Cohen v. Tenney Corp., supra, the court reconsidered and stated:

"The import of *Pearlstein*, in my view, is not that all settlements of matured claims, short of litigation, are void; but rather that their terms are not necessarily above judicial scrutiny, as the district court in that case had erroneously ruled. (citing Pearlstein). Since the 1933 Securities Act does not require persons aggrieved by violations of its provisions to sue, this general release, purporting to settle an already ripened controversy, is not by

5. Regulation T of the Federal Reserve System, 12 C.F.R. § 220.4(e)(2).

6. Section 29 of the Securities Exchange Act of 1934, 15 U.S.C. 78cc provides:

"(a) Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

(b) Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual

knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, or regulation: Provided, (A) That no contract shall be void by reason of this subsection because of any violation of any rule or regulation prescribed pursuant to paragraph (2) or (3) of subsection (c) of section 78o of this title, and (B) that no contract shall be deemed to be void by reason of this subsection in any action maintained in reliance upon this subsection, by any person to or for whom any broker or dealer sells, or from or for whom any broker or dealer purchases, a security in violation of any rule or regulation prescribed pursuant to paragraph (1) of subsection (c) of section 78o of this title, unless such action is brought within one year after the discovery that such sale or purchase involves such violation and within three years after such violation."

7. This is the position plaintiffs' counsel takes, asserting that the present action cannot be settled amicably and must either proceed to trial or be decided by the Court as a matter of law.

its term void as a matter of law. (citation omitted)

"The inquiry, however, does not end here. Judicial hostility toward waivers generally requires that the right of private suit for alleged violations be scrupulously preserved against unintentional or involuntary relinquishment." Cohen v. Tenney Corp., supra at 284.

The distinction between the instant case and *Pearlstein* lies in the purposes and effects of the stipulations of settlement executed in each case. In *Pearlstein*, the stipulation perpetuated the very evil Congress had condemned by granting the plaintiffs an illegal extension of credit to pay for the bonds which were being purchased. The stipulation continued the illegal transaction. In this case, on the other hand, the liquidation of plaintiffs' account severed the Congressionally-regulated relationship of broker and customer. Any extension of credit for the purchase of stock must necessarily have terminated when the stock was sold. At that point, it only remained for the parties to attempt to recoup their losses.[8]

In light of the above, I conclude that the rationale of Cohen v. Tenney Corp., supra, dissuades me from holding these releases void as a matter of law. Cf. Jennings v. Boenning & Company, 352 F. Supp. 1000 (E.D.Pa.1972). I might further add that once the dispute between the parties has crystallized, I do not believe Congress intended Section 29 to bar all attempts at amicable resolution. Cf. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (which held void a stipulation binding the parties to arbitrate future controversies) with Moran v. Paine, Webber, Jackson & Curtis, 389 F.2d 242 (3d Cir. 1968) (which sanctioned an agreement to sub-mit an "existing controversy" to arbitration).

However, plaintiffs further contend that the release of the defendant is void under common law principles of mutual mistake, misrepresentation and unconscionability. In light of the chameleon-like nature of the facts in support and opposition to these theories, I cannot conclude that there is no genuine issue as to the material facts. In addition, since defendant posits its counterclaim on the possibility that the release will be held void, it must also wait until the facts supporting or negating plaintiffs' common law theories are established.

---

8. Under Pearlstein, of course, defendant is liable for any loss occasioned by the margin violation. Plaintiffs on the other hand may well have been, and may well be, liable for the balance owing on the original contracts of purchase. *Pearlstein* expressly left open the question of plaintiff's liability for the full price of the stock on the date of purchase, 429 F.2d at 1141, n. 9 and 1144, n. 12, but indicated approval of prior cases recognizing the purchaser's liability. 429 F.2d at 1144. See, e. g., A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967).