Ruth KORN, Individually and as executrix of the Estate of Ben Korn, Deceased, on behalf of herself and all other Purchasers and Holders of Limited Partnership Interests in 63 Wall Associates similarly situated, Plaintiff,

v.

FRANCHARD CORPORATION et al., Defendants.

No. 67 Civ. 3445 (WCC).

United States District Court,
S. D. New York.

Jan. 28, 1975.

McConnell, Scheuermann & Davis, New York City, for plaintiff; Wendell Davis, Jr., New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendants Franchard Corp. and Glickman Servicing Corp.; Peter J. Schlesinger, New York City, Linda L. Randell, Chicago, Ill., Paul G. Wallach, New York City, of counsel.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendants Siegel and Young.

## OPINION AND ORDER

CONNER, District Judge:

In 1961 plaintiff and her husband, since deceased, purchased two units of limited partnership in a real estate syndication known as 63 Wall Associates

for $10,000.00. Six years later, plaintiff initiated this action against the general partners and others alleging that the prospectus dated September 6, 1961 was contaminated by well over one hundred misrepresentations and omissions of material fact in violation of various provisions of state and federal law.

On February 10, 1968, following the sale of partnership property and while this lawsuit was pending, a distribution of $4,570.00 for each $5,000.00 unit of original investment was made. The reverse side of the distribution check contained a general release of all claims against defendants Franchard Corporation, Louis A. Siegel ("Siegel") and Seymour Young ("Young"). By an accompanying letter, each distributee was given the option of 1) executing the release by endorsing the check or 2) requesting a substitute check in an identical amount but without a release. Of the one thousand and fifty units of partnership interests for which checks were sent to investors, owners of only seventy units requested the substitute check. All the other limited partners endorsed the back of the original check and thereby executed the release contained thereon. See Korn v. Franchard Corp., 456 F.2d 1206 (2d Cir. 1972).

Presently before the Court is a motion, brought on by defendants pursuant to Rule 23 F.R.Civ.P., for an order declaring the releases to be valid and limiting the class to those members who did not endorse the initial check.[1] This would eliminate over 90% of the class.

Plaintiff makes two arguments in opposition. First, it is contended that the releases are a nullity as a matter of law under Section 29(a) of the Securities Exchange Act of 1934 ("Section 29(a)"), 15 U.S.C. § 78cc(a)[2] which prohibits, as against public policy, any agreement, settlement, stipulation or release waiving compliance with the provisions of that Act.[3] Second, plaintiff asserts that even if Section 29(a) does not forbid the release of a claim under the securities laws, there are triable questions of fact bearing on the following issues:

1) did the investors act with full knowledge of their rights and thereby execute the releases intelligently and voluntarily;

2) did Siegel and Young breach the fiduciary duty owed by general partners of real estate ventures to their investing co-partners by seeking the releases in question;

3) did the requirement that the investors request a new check in order to avoid the release constitute duress and coercion thereby voiding the releases; and

4) did the fraud which allegedly contaminates the original transaction vitiate the releases as well?

In arguing that the releases are invalid as a matter of law, plaintiff places principal reliance upon In re Cohen's Will, 51 F.R.D. 167 (S.D.N.Y.1970). In that case, Judge Tenney, relying primarily upon Pearlstein v. Scudder & German, 429 F.2d 1136 (2d Cir. 1970) and Cohen v. Tenney Corp., 318 F.Supp. 280 (S.D.N.Y.1970), ruled "that agreements, settlements and stipulations and re-

1. The Court of Appeals has directed "that the issue of the validity of the releases be disposed of as soon as practicable, so that the size of the ultimate class can be definitely determined before the substantive merits of the claim are adjudicated." Korn v. Franchard Corp., 456 F.2d 1206, 1214 (2nd Cir. 1972).

2. Section 29(a) of the Securities Exchange Act of 1934 provides that,
"[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of this title or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void."

3. This argument does not apply to the cause of action asserted under state law where there is no statutory or common law provision or policy prohibiting a voluntary release of a cause of action. Cohen v. Tenney Corp., 318 F.Supp. 280, 283 (S.D.N.Y.1970); Pawgan v. Silverstein, 265 F.Supp. 898, 901 (S.D.N.Y.1967). Under New York law "duress, illegality, fraud, or mutual mistake, must be established or else the release stands." Mangini v. McClurg, 24 N.Y.2d 556, 563, 301 N.Y.S.2d 508, 513, 249 N.E.2d 386, 390 (1969).

leases affecting a party's liability under the federal securities laws are void as against public policy." 51 F.R.D. at 172. The Court went on to state that Section 29(a) and a parallel provision embodied in Section 14 of the Securities Act of 1933, 15 U.S.C. § 77n, were apparently intended to make void, short of litigation, any final settlement of actions charging securities law violations. A review of the text and legislative history of the statutes, their interpretation by other courts and the subsequent history of the cases relied upon by Judge Tenney compel this Court respectfully to disagree with the conclusion in *In re Cohen's Will* and accordingly to reject plaintiff's argument herein.

■ Section 29(a) and its counterparts, which can be found in all six federal securities acts, prevent professional broker-dealers from circumventing the provisions of those acts by invalidating any attempt to obtain anticipatory waivers of compliance with the provisions of the Securities Exchange Act of 1934, Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Junker v. Midterra Ass. Inc., 49 F.R.D. 310, 313 (D.C.1970), and should not be construed to apply to the release of matured claims. To rule otherwise would foreclose the parties from settling matured claims and force every claimant to pursue the litigation to its costly conclusion. Many small but otherwise settleable cases would have to be dropped and many large but otherwise settleable cases would clog the dockets of the federal courts. This would not only constitute a blow to judicial economy, but to justice and common sense as well. See Mittendorf v. J. R. Williston & Beane, 372 F. Supp. 821, 835 (S.D.N.Y.1974). The cases relied upon in *In re Cohen's Will, supra,* do not rule to the contrary but, to the extent to which they are relevant here, support this position.

In Pearlstein v. Scudder & German, *supra,* the plaintiff had purchased bonds on credit and was obligated under Regulation T of the Federal Reserve System, 12 C.F.R. § 220.4(c)(2) promulgated pursuant to Section 7(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78g(a), to pay for them within seven business days after the date of purchase. The plaintiff defaulted and the defendant broker instituted a lawsuit to recover the balance due. A settlement was agreed upon under which the plaintiff was given an extension of time to pay for the bonds. Once more, however, payment was not forthcoming and eventually the bonds were sold at a loss. The plaintiff sued, charging that the defendant violated the provisions of Section 7(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78g(c), by illegally extending credit to the plaintiff, and of Regulation T for failure to demand full payment from the plaintiff within the statutory time period. The Court of Appeals ruled that the settlement was invalid under Section 29(a) as a stipulation waiving compliance with the provisions of the Securities Exchange Act of 1934. Pearlstein v. Scudder & German, *supra,* 429 F.2d at 1143.

■ The distinction between this case and *Pearlstein* is that there the settlement itself authorized a continuing violation of federal law by granting an illegal extension of credit to pay for the bonds. The settlement in effect attempted to legalize the very acts which the federal securities laws were enacted to prevent and therefore constituted a waiver of compliance with the provisions of those laws. Here, by contrast, the releases merely compromised matured claims and constituted nothing more than a waiver of the right to litigate those claims. By endorsing the checks, the limited partners in no way excused compliance with any provision of federal law.[4] See Zapach v. Elkins, Morris,

---

4. The Court does not view the releases in question as constituting either a "dismissal or compromise" of a class action within the meaning of Rule 23(e), F.R.Civ.P. As the Court of Appeals has clearly indicated, the validity of the releases will have no effect on the maintainability of this lawsuit as a class action. Korn v. Franchard Corp., *supra,* 456 F.2d at 1210.

Stroud & Co., 375 F.Supp. 669 (M.D. Pa.). Furthermore, the *Pearlstein* Court seemed to recognize that after an active controversy has arisen the remedial right of access to the courts can be waived under proper circumstances. Pearlstein v. Scudder & German, *supra*, 429 F.2d at 1143.

In Cohen v. Tenney Corp., *supra*, Judge Tyler initially construed Pearlstein as holding Section 29(a) to be "an *in terrorem* provision" voiding *any* settlement of a securities case short of litigation. It was upon this analysis that Judge Tenney relied in deciding *In re Cohen's Will, supra.* Subsequently, however, Judge Tyler granted a motion for reargument and recognized that he had "read more into . . . Pearlstein . . . than is justified" and he repudiated, in part, his earlier opinion, stating that,

> "[t]he import of *Pearlstein,* in my view, is not that all settlements of matured claims, short of litigation, are void; but rather that their terms are not necessarily above judicial scrutiny, as the district court in that case had erroneously ruled. Pearlstein v. Scudder & German, 295 F.Supp. 1197, 1203 (S.D.N.Y.1968). Since the 1933 Securities Act does not require persons aggrieved by violations of its provisions to sue, this general release, purporting to settle an already ripened controversy, is not by its terms void as a matter of law." (Citations omitted) 318 F.Supp. at 284.

It is this later interpretation of *Pearlstein* which has been adopted in every reported case in which this issue has since been considered. See, e. g., Murtagh v. University Computing Co., 490 F.2d 810, 816 (5th Cir. 1974); Mittendorf v. J. R. Williston & Beane, Inc., *supra,* 372 F.Supp. at 834–835; Zapach v. Elkins, Morris, Stroud & Co., *supra,* 375 F.Supp. at 671–672.

For all the reasons set out above, I conclude that Section 29(a) does not nullify, as a matter of law, all settlements of claims arising from acts violating the Securities Exchange Act of 1934, but only those which condone continuing violations of federal law or anticipatorily waive the right to commence litigation arising out of future violations.

The second theory propounded by plaintiff in opposition to this motion asserts that there are issues of fact presented which cannot be resolved short of trial. Upon analysis, it becomes clear that a trial is in fact unnecessary.

The first of four allegedly triable issues of fact, and the only one briefed in any detail, involves an assertion by plaintiff that the releases were executed with insufficient notice of the facts and circumstances surrounding this litigation. Although it is without question that judicial hostility toward waivers of statutory rights requires a scrupulously careful examination of the circumstances surrounding their execution, Murtagh v. University Computing Co., *supra,* 490 F.2d at 816; Cohen v. Tenney Corp., *supra,* 318 F.Supp. at 284, the nature and extent of the notice given in this case rules out any reasonable possibility of involuntary relinquishment. For example, it is uncontested that between October 20, 1967 and February 10, 1968 a series of four letters was sent from the general partners to the limited partners, advising them of the facts concerning the commencement of this action and the claims asserted therein.

A letter dated October 20, 1967 first notified the limited partners of the commencement of the action. On the fourth page of a four-page typewritten letter, it was stated:

> "We wish to report that on September 14, 1967 two limited partners, who own two units but claim to represent all limited partners, started an action in U. S. District Court against the undersigned, [defendants Siegel and Young] Franchard Corporation and others, seeking to rescind the original sale of units to the limited partners in 1961 and recover their initial investment plus interest, less the cash distributions made to them, on the ground that the prospectus contained

false and misleading information. In our opinion the plaintiffs' claim is without merit and the lawsuit will be vigorously defended."

Although the balance of the letter was devoted to informing the limited partners of an agreement entered into on October 1, 1967 to sell off the partnership's property, the very first line of the letter clearly stated that, "[t]his is a most important letter. Please read it carefully. *It requires your prompt attention.*"

Approximately two months later, a second letter dated December 19, 1967 was sent to the limited partners. After informing them that there had been 90 per cent approval of the proposed sale and describing the details of the sale, the letter noted:

> "In our letter of October 20th, we informed you that an action had been started in the U. S. District Court by two limited partners seeking to rescind the original sale of units to the limited partners in 1961 and recover their initial investment plus interest, less the cash distributions made to them. In their action the plaintiffs claim to represent all limited partners. The plaintiffs have now brought a motion before the Court to enjoin the distribution to the limited partners of the sale proceeds and other funds until their lawsuit is disposed of. The motion is scheduled to be heard by the Court on December 26th. Every effort will be made by counsel to defeat the motion."

Subsequently, in a two-page letter dated January 10, 1968, the general partners advised the limited partners of further developments in connection with the proposed sale and added that,

> "[o]n Tuesday, January 2nd, the motion to restrain the distribution to the limited partners of the sale proceeds and other funds was argued before the U. S. District Court. No decision has been rendered as yet."

A month later, in a letter dated February 10, 1968, the limited partners were informed that "the sale of the partnership property closed . . . and . . . the U. S. District Court denied the motion to enjoin the distribution of the sale proceeds and other partnership funds." The letter went on to state that the general partners are therefore enclosing a distribution check for $4,570.00 for each $5,000.00 unit of original investment. The limited partners were further advised that certain income relating to the operation of the property prior to the closing, a detailed statement of the sale, and a final accounting would be forwarded in the future.

Finally, the letter pointed out that, "the court decision mentioned in the first paragraph of this letter does not dispose of this lawsuit. Neither its ultimate outcome nor its effect on the partnership or partners can be assessed at this time, although in the opinion of the undersigned the plaintiff's claim is entirely without merit.

> "In this regard we wish to remind you that we have served as your general partners since the inception of the partnership more than six years ago—without any compensation and without participation in the past, present or future distributions of partnership funds. This, notwithstanding the extraordinary and extremely trying problems that confronted the partnership and to the resolution of which we devoted our time, effort and ability unstintingly with the resultant favorable refinancing of the mortgages and the advantageous sale of the property.

> "Under the circumstances, therefore, we now request you to acknowledge what we have accomplished in your behalf by signing the release on the back of the enclosed check to indicate that you have no claim against us or Franchard Corporation. If you do not wish to do so you may return this check to us for another without this statement. Of course, this will not relieve us from accounting to you in full for the distribution of the partnership

funds, including any future distribution as described in this letter."

■ The check described above contained the following language on its reverse side:

"By endorsement hereof the payee releases all claims against Franchard Corporation, Louis A. Siegal and Seymour Young relative to 63 Wall Associates as requested in letter dated February 10, 1967, receipt of which payee acknowledges." [5]

■ In summary, the limited partners were notified on four separate occasions that this lawsuit had been commenced in their behalf. Each limited partner was given the option to return the check containing the release and receive another for the same amount minus the release. Certainly they were executed at a time when the class members had actual knowledge or could, upon reasonable inquiry, have apprised themselves of all the allegations in the complaint. In fact, the lawsuit was described in the letters from the general partners in essentially the same terms used to describe it in the notice to the class sent out pursuant to Rule 23(c)(2), F.R.Civ.P.[6] and in opinions filed in both the United States Court of Appeals, see Korn v. Franchard Corp., *supra* at 1207 and this Court, see Korn v. Franchard Corp., 50 F.R.D. 57, 58 (S.D.N.Y.1970); Korn v. Franchard Corp., 67 Civ. 3445 (Memorandum and Order dated November 6, 1974). Accordingly, I find that the releases were executed with sufficient notice of the lawsuit, of the claims made therein, and of the effect on those claims of the execution of the release, to be deemed intelligently and deliberately entered into.

■ Plaintiff's assertion that defendants have breached their fiduciary duties by accepting the releases gives us less pause. Plaintiff offers no argument or analysis on this point but merely an unsupported statement that a triable fact issue exists as to,

"whether the manner in which defendants Siegel and Young sought releases was in breach of that obligation of highest good faith owed by general partners of real estate ventures to their investing copartners in New

---

5. Although the rule was heavily criticized by both courts and commentators alike, see e.g., Derby v. Prewitt, 12 N.Y.2d 100, 104–105, 236 N.Y.S.2d 953, 187 N.E.2d 556 (1962) and was changed in 1972, see N.Y.Gen.Oblig.Law § 15–108 (McKinney's Consol.Laws, c. 24–A, 1964), in 1968, when the releases were executed, a general release of one or more joint tortfeasors released all joint tortfeasors in the absence of an explicit reservation of rights against those not intended to be released. Lucio v. Curran, 2 N.Y.2d 157, 162, 157 N.Y.S.2d 948, 139 N.E.2d 133 (1956); Rapp v. Myers, 291 N.Y. 709, 52 N.E.2d 596 (1943); Milks v. McIver, 264 N.Y. 267, 269–270, 190 N.E. 487 (1934); McNamara v. Eastman Kodak Co., 232 N.Y. 18, 21, 133 N.E. 113 (1921).

Plaintiff has chosen not even to address this point and indeed it appears clear that since the releases signed by the limited partners contained no reservation of rights against any of the defendants in this action, to the extent that those named in the release are absolved from liability, all the other defendants are likewise absolved.

6. The notice to the class read in pertinent part:

"PLEASE TAKE NOTICE that the above lawsuit has been instituted in this Court. The plaintiffs claim to represent a Class consisting of all purchasers of Limited Partnership Interest in 63 WALL ASSOCIATES who purchased their interests during 1961 and/or in any subsequent period, relying on a Prospectus dated Septembet 6, 1961. The complaint alleges that the Prospectus contained certain false and misleading statements and certain material omissions and that the purchasers of Limited Partnership Interests in 63 WALL ASSOCIATES who relied on that Prospectus were damaged thereby. The lawsuit seeks damages and injunctive relief.

"The defendants have denied the allegations and have denied liability in this lawsuit. The Court has decided that the lawsuit may be maintained as a Class Action, on behalf of all purchasers of such Limited Partnership Interests who claim to have lost money because of the alleged frauds, regardless whether they have since retained or sold the Units purchased by them."

York. Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545 (1928)."

Although it is beyond dispute that partners are bound by fiduciary ties and that the utmost good faith is required of every partner toward his co-partners, Sugarman on Partnership, § 98 at 126 (4th ed. 1966); see N.Y.Part.Law § 43 (McKinney's Consol.Law, c. 39, 1948), plaintiff has failed to prove, or even allege, in what way these releases constituted a breach of good faith. This Court knows of no cases and plaintiff has directed us to none which rule that a claim against a fiduciary cannot be released under proper circumstances.

Plaintiff's final contentions possess even less color of merit. It is urged, once again without any supporting argument or citation of authorities, that triable fact issues exist as to:

1) "whether the releases are vitiated by the duress and coercion inhering in the defendants' requirement that the investors give up a known right (the checks that had been sent to them containing the release) in order to request a new check without the objectionable endorsement," and,

2) "whether the releases are vitiated by the same fraudulent statements and omissions upon which the complaint itself is based . . . ."

■■ A crucial element of coercion or duress is lack of free choice. The circumstances involved must be such that the party asserting the defense had no practical alternative open to him. See United States v. Bethlehem Steel Corp., 315 U.S. 289, 300–305, 62 S.Ct. 581, 86 L.Ed. 855 (1942); Friedman v. Bache & Co., 321 F.Supp. 347, 350 (S.D.Fla.1970). In this case the limited partners were presented with a clear alternative. The concluding paragraph of the February 10, 1974 letter from the general partners to the limited partners reads as follows:

"[W]e now request you . . . [to sign] the release on the back of the enclosed check . . . . *If you do not wish to do so you may return this check to us for another without this statement.*" (Emphasis added).

This option eliminates any possible inference of coercion or duress.

■ With respect to the issue of fraud, although it would be manifestly unfair to dismiss a claim on the strength of a release which was obtained as a result of the very fraud complained of, e. g., Schine v. Schine, 254 F.Supp. 986, 988 (S.D.N.Y.1966), such is not the case here where plaintiff complains of a 1961 transaction and defendants assert a 1968 release. See Mittendorf v. J. R. Williston & Beane, Inc., *supra*, 372 F. Supp. at 834. The record before us fails to disclose any respect in which the decision of those class members who executed the release was affected by fraud. In Cohen v. Tenney Corp., *supra*, 318 F. Supp. at 283, Judge Tyler concluded:

"The contention of fraud drifts across the sky appearing now like a camel, now like a weasel and at times disappearing altogether. It would be a worthless exercise to attempt to be precise about just what fraud in the obtaining of the releases plaintiffs presently claim. This may well be an issue on which discovery should be granted before summary judgment or partial dismissal of the complaint is ordered . . . ."

In this case, we have already traversed that trial. In my order dated November 6, 1974, at a time when this motion had already been made and the papers in it filed, I directed that "[p]laintiff will have ten (10) days . . . to file a request for a continuance for a reasonable period for preparation of a response to defendants' . . . motion to declare the validity of the releases." Obviously, under this directive, reasonable discovery on any issue relating to the releases would be allowed. Plaintiff, apparently satisfied with the information she already had, chose to let this period lapse. There accordingly appears to be no reason to delay further a decision as

to the validity of the releases to allow discovery which plaintiff has seen fit not even to request.

 For the reasons stated, I conclude that the releases in issue are valid and binding, and that the operative language waiving "all claims against Franchard Corporation, Louis A. Siegel and Seymour Young relative to 63 Wall Associates" bars all the causes of action asserted on behalf of the signatories in this action. The Complaint is therefore dismissed, on the merits, with respect to all those class members who executed the releases.

So ordered.